No. 13731

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

      Plaintiff and Appellant,

-vs-

WADE TURNER SAWYER,

      Defendant and Respondent.

---

Appeal from:  District Court of the First Judicial District,
            Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Robert Yunck argued, Cut Bank, Montana

    For Respondent:

        Hooks and Sherlock, Townsend, Montana
        Jeffrey M. Sherlock argued, Townsend, Montana

---

               Submitted:  September 30, 1977

               Decided:  OCT 18 1977

Filed: OCT 18 1977

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court:

The state appeals from an order of the district court, Broadwater County, suppressing evidence obtained in an inventory search of defendant's automobile.

Defendant was apprehended August 14, 1976, after Undersheriff Michael Walrod observed him making an illegal turn on the streets of Townsend, Montana. Officer Walrod recognized defendant and proceeded with Ted Ingersoll, a forest service director who was accompanying the officer, to look for defendant. They found defendant's car at a bar parking lot and noticed the car had a ten-day registration sticker which had expired. The officer found defendant in the bar and informed him he was charged with reckless driving and improper vehicle registration, and that he would be ticketed at the sheriff's office. Officer Walrod rode to the sheriff's office with defendant, in defendant's car.

At the sheriff's office Officer Walrod informed defendant bond would be $125; $100 for reckless driving and $25 for improper vehicle registration. Defendant was unable to meet the bond, so he was booked and placed in the county jail. At that time officers impounded defendant's automobile and made a complete inventory of its contents, discovering pills they believed to be amphetamines under the driver's seat. As a result, defendant was charged with criminal possession of dangerous drugs.

The district court suppressed the evidence obtained in the inventory, based on these conclusions of law:

- 2 -

"1. That the action of the arresting officer, in setting bond without reference to any schedule established by a judicial officer, was a violation of Section 95-1103, R.C.M. 1947, and resulted in the illegal detention of the defendant.

"2. That the inventory search of defendant's vehicle was unreasonable in light of the Fourth Amendment to the U.S. Constitution."

First, we consider the state's contention the district court erred in its finding that bail was improperly set by a law enforcement officer. Although it is a constitutional and statutory requirement that bail be set by a judicial officer, section 95-1103, R.C.M. 1947, allows a peace officer to accept bail in limited circumstances:

"Setting and accepting bail in minor offenses. A justice of the peace or police judge may in his discretion establish and post a schedule of cash bail for offenses not amounting to a felony. A peace officer may accept bail in behalf of the justice of the peace or police judge in accordance with the schedule. * * *"

The state argues there is no evidence in the record to support the conclusion of the district court that bond was not accepted "in accordance with the schedule" as required by section 95-1103. While the officer admitted he did not physically refer to the bond schedule set by the justice of the peace, he explained:

"A. On the Reckless Driving charge I used what I assumed was correct, the correct bond, what the Highway Patrol had been using and what the Judge had been using in the past."

We decline to hold that a peace officer may not rely on his everyday experience and memory in accepting bond in behalf of a magistrate. There was no evidence the bond accepted by the officer in the instant case was any different from that listed in the bond schedule. The district court finding of a violation of section 95-1103 is not supported by substantial evidence.

- 3 -

Second, is the question of the constitutionality of the inventory search of defendant's vehicle. The state freely admits the officers had no probable cause or even any suspicion that contraband might be found in the vehicle. No search warrant was ever obtained. The inventory was conducted, according to the officers who testified, solely as a matter of standard police procedure for the protection of any valuable items which the owner may have left in the automobile. The constitutionality of such a search is a question of first impression in Montana.

It is axiomatic that a search must comport with state and federal constitutional law. The reasonableness of an inventory search under the Fourth Amendment of the United States Constitution was discussed in the recent United States Supreme Court decision South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L ed 2d 1000 (1976). The Court in Opperman upheld, by a 5-4 majority, an inventory search of an abandoned automobile impounded for multiple overtime parking violations.

The district court in the instant case factually distinguished Opperman and found a violation of the Fourth Amendment. We need not consider the Fourth Amendment issue because we view the Montana Constitution to afford an individual greater protection in this instance than is found under the Fourth Amendment in Opperman.

The 1972 Montana Constitution, Art. II, Sections 10 and 11, provide:

> "Section 10. Right of privacy. The right of
> individual privacy is essential to the well-being
> of a free society and shall not be infringed without
> the showing of a compelling state interest.

"Section 11. Searches and seizures. The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing."

The importance of the right of individual privacy to the framers of the Montana Constitution is obvious from these provisions. This Court has previously noted the significance of the explicit guarantee of the right of individual privacy contained in Section 10, as no comparable provision exists in the United States Constitution. State v. Coburn, 165 Mont. 488, 495, 530 P.2d 442 (1974).

It is also clear that an inventory search such as the one considered here is a significant invasion of individual privacy. One of the officers testified that the standard inventory search is no different in scope than a warranted search of an automobile. As was noted in Mozzetti v. Superior Court, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84, 88, 89 (1971):

"It seems undeniable that a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner. Regardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private property of an individual. In that process suitcases, briefcases, sealed packages, purses--anything left open or closed within the vehicle--is subjected without limitation to the prying eyes of authorities. * * *"

While we have recognized the difference, for constitutional purposes, between an automobile and a home or office, State v. Spielmann, 163 Mont. 199, 203, 516 P.2d 617 (1973), this Court has also approved this statement in State v. Amor, 164 Mont. 182, 185, 520 P.2d 773 (1974), quoting Coolidge v. New Hampshire,

- 5 -

403 U.S. 443, 461, 91 S.Ct. 2022, 29 L ed 2d 564, 580 (1971):

> "'The word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears.'"

As a substantial infringement upon individual privacy, the inventory search must meet the "reasonableness" and "compelling state interest"standards of the Montana Constitution.

There are two basic justifications for an inventory search that could possibly have any application to the instant case: (1) protection of the contents of the vehicle for the benefit of the owner; and (2) protection of the police from claims for lost property for which the police are responsible.

While the first justification has merit in the case of an abandoned vehicle, it is particularly not helpful where, as here, the owner of the vehicle is present and can be questioned about valuable items and possible arrangements for their disposition. It would be anomalous to justify a search of an automobile to be for the owner's benefit, when the owner is available but does not consent to the search. Surely the property owner is an adequate judge of the treatment of the property that would most benefit him.

The inventory, then, must be based upon the protection of the officers from claims for lost property. While this is a reasonable concern, it bears little weight in Montana. As the custodian of an impounded vehicle, a police or sheriff's department is a "gratuitous depositary" within the meaning of section 20-211, R.C.M. 1947. As such, the depositary owes a duty of "slight care" for the preservation of the property, and is liable to the owner only for losses occasioned by "gross negligence." Boyd v. Harrison State Bank, 102 Mont. 94, 56

P.2d 724 (1936). Certainly this duty would be satisfied by simply securing and taking an inventory of any valuable items in plain view from outside the vehicle, rolling up the windows, locking the doors, and returning the keys to the owner. Mozzetti v. Superior Court, supra.

Viewed in this light, these justifications simply do not bear up under the countervailing force of the right of the individual to privacy and freedom from unreasonable searches in Montana. The Supreme Court of South Dakota, on the remand of State v. Opperman, (So.Dak.1976), 247 N.W.2d 673,675, asserted as a matter of state constitutional law:

> "* * * noninvestigative police inventory searches
> of automobiles without a warrant must be restricted
> to safeguarding those articles which are within
> the plain view of the officer's vision. * * *"

This standard reasonably balances the needs of the police as custodians of a lawfully impounded vehicle with the rights of privacy and freedom from unreasonable searches and seizures held by individuals in Montana. We adopt it as applicable to Montana constitutional law. In the instant case the contraband was found under a seat and admittedly was never in plain view. It was seized in violation of the 1972 Montana Constitution and was properly suppressed.

To avoid misunderstanding, we wish to note the limitations of our present holding. We in no way limit the right of an officer to seize items in plain view where the officer's presence is justifiable. State v. Emerson, 169 Mont. 285, 546 P.2d 509, 33 St.Rep. 261 (1976); State v. Gallagher, 162 Mont. 155, 509 P.2d 852 (1973). This is not a case where there was any probable cause to search or where the search was in any manner related to the arrest. See: State v. Turner, 164 Mont. 371, 523 P.2d

1386 (1974); State v. Armstrong, 149 Mont. 470, 428 P.2d 611 (1967); State v. Houchin, 149 Mont. 503, 428 P.2d 971 (1967).

We hold only that where the sole justification for an inventory search is the fact it is incident to the lawful custody of an impounded vehicle and pursuant to standard police procedure, such search must be limited in scope to articles in plain view from outside the vehicle.

The order of the district court suppressing evidence is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.