# ILLINOIS v. LAFAYETTE

No. 81–1859.   Argued April 20, 1983—Decided June 20, 1983

BURGER, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. MARSHALL, J., filed an opinion concurring in the judgment, in which BRENNAN, J., joined, *post*, p. 649.

*Michael A. Ficaro*, Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the briefs were *Neil F. Hartigan*, Attorney General, *Tyrone C. Fahner*, former Attorney General, *Paul P. Biebel, Jr.*, First Assistant Attorney General, and *Steven F. Molo*, Assistant Attorney General.

*Peter A. Carusona* argued the cause for respondent. With him on the brief were *Robert Agostinelli* and *Frank W. Ralph.**

CHIEF JUSTICE BURGER delivered the opinion of the Court.

The question presented is whether, at the time an arrested person arrives at a police station, the police may, without obtaining a warrant, search a shoulder bag carried by that person.

I

On September 1, 1980, at about 10 p. m., Officer Maurice Mietzner of the Kankakee City Police arrived at the Town Cinema in Kankakee, Ill., in response to a call about a disturbance. There he found respondent involved in an altercation with the theater manager. He arrested respondent for disturbing the peace, handcuffed him, and took him to the police station. Respondent carried a purse-type shoulder bag on the trip to the station.

At the police station respondent was taken to the booking room; there, Officer Mietzner removed the handcuffs from respondent and ordered him to empty his pockets and place

---

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General Lee*, *Assistant Attorney General Jensen*, *Deputy Solicitor General Frey*, and *Elliott Schulder* for the United States; and by *Fred E. Inbau*, *Wayne W. Schmidt*, *James P. Manak*, *Howard G. Berringer*, *Richard J. Brzeczek*, *David Crump*, *Courtney A. Evans*, *Daniel B. Hales*, *James A. Murphy*, and *Evelle J. Younger* for the Chicago Police Department et al.

*Quin Denvir* and *George L. Schraer* filed a brief for the California State Public Defender as *amicus curiae* urging affirmance.

the contents on the counter. After doing so, respondent took a package of cigarettes from his shoulder bag and placed the bag on the counter. Mietzner then removed the contents of the bag, and found 10 amphetamine pills inside the plastic wrap of a cigarette package.

Respondent was subsequently charged with violating § 402(b) of the Illinois Controlled Substances Act, Ill. Rev. Stat., ch. 56½, ¶ 1402(b) (1981), on the basis of the controlled substances found in his shoulder bag. A pretrial suppression hearing was held at which the State argued that the search of the shoulder bag was a valid inventory search under *South Dakota* v. *Opperman*, 428 U. S. 364 (1976). Officer Mietzner testified that he examined the bag's contents because it was standard procedure to inventory "everything" in the possession of an arrested person. App. 15, 16. He testified that he was not seeking and did not expect to find drugs or weapons when he searched the bag, and he conceded that the shoulder bag was small enough that it could have been placed and sealed in a bag, container, or locker for protective purposes. *Id.*, at 15. After the hearing, but before any ruling, the State submitted a brief in which it argued for the first time that the search was valid as a delayed search incident to arrest. Thereafter, the trial court ordered the suppression of the amphetamine pills. *Id.*, at 22.

On appeal, the Illinois Appellate Court affirmed. 99 Ill. App. 3d 830, 425 N. E. 2d 1383 (3d Dist. 1981). It first held that the State had waived the argument that the search was incident to a valid arrest by failing to raise that argument at the suppression hearing. *Id.*, at 832, 425 N. E. 2d, at 1385. However, the court went on to discuss and reject the State's argument: "[E]ven assuming, *arguendo*, that the State has not waived this argument, the stationhouse search of the shoulder bag did not constitute a valid search incident to a lawful arrest." *Id.*, at 833, 425 N. E. 2d, at 1385.

The state court also held that the search was not a valid inventory of respondent's belongings. It purported to dis-

tinguish *South Dakota* v. *Opperman, supra,* on the basis that there is a greater privacy interest in a purse-type shoulder bag than in an automobile, and that the State's legitimate interests could have been met in a less intrusive manner, by "sealing [the shoulder bag] within a plastic bag or box and placing it in a secured locker." 99 Ill. App. 3d, at 834–835, 425 N. E. 2d, at 1386. The Illinois court concluded:

> "Therefore, the postponed warrantless search of the [respondent's] shoulder bag was neither incident to his lawful arrest nor a valid inventory of his belongings, and thus, violated the fourth amendment." *Id.*, at 835, 425 N. E. 2d, at 1386.

The Illinois Supreme Court denied discretionary review. App. to Pet. for Cert. 1b. We granted certiorari, 459 U. S. 986 (1982), because of the frequency with which this question confronts police and courts, and we reverse.

## II

The question here is whether, consistent with the Fourth Amendment, it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking and jailing the suspect. The justification for such searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search. Indeed, we have previously established that the inventory search constitutes a well-defined exception to the warrant requirement. See *South Dakota* v. *Opperman, supra.* The Illinois court and respondent rely on *United States* v. *Chadwick*, 433 U. S. 1 (1977), and *Arkansas* v. *Sanders,* 442 U. S. 753 (1979); in the former, we noted that "probable cause to search is irrelevant" in inventory searches and went on to state:

> "This is so because the salutary functions of a warrant simply have no application in that context; the constitu-

tional reasonableness of inventory searches must be determined on other bases." 433 U. S., at 10, n. 5.[1]

A so-called inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration. To determine whether the search of respondent's shoulder bag was unreasonable we must "balanc[e] its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware* v. *Prouse*, 440 U. S. 648, 654 (1979).

In order to see an inventory search in proper perspective, it is necessary to study the evolution of interests along the continuum from arrest to incarceration. We have held that immediately upon arrest an officer may lawfully search the person of an arrestee, *United States* v. *Robinson*, 414 U. S. 218 (1973); he may also search the area within the arrestee's immediate control, *Chimel* v. *California*, 395 U. S. 752 (1969). We explained the basis for this doctrine in *United States* v. *Robinson, supra,* where we said:

> "A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest

---

[1] See also *United States* v. *Edwards*, 415 U. S. 800 (1974). In that case we addressed *Cooper* v. *California*, 386 U. S. 58 (1967), where the Court sustained a warrantless search of an automobile that occurred a week after its owner had been arrested. We explained *Cooper* in the following manner: "It was no answer to say that the police could have obtained a search warrant, for the Court held the test to be, not whether it was reasonable to procure a search warrant, *but whether the search itself was reasonable,* which it was." 415 U. S., at 807 (emphasis added).

situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. *It is the fact of the lawful arrest which establishes the authority to search,* and we hold that in the case of a lawful custodial arrest *a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."* 414 U. S., at 235 (emphasis added).

An arrested person is not invariably taken to a police station or confined; if an arrestee is taken to the police station, that is no more than a continuation of the custody inherent in the arrest status. Nonetheless, the factors justifying a search of the person and personal effects of an arrestee upon reaching a police station but prior to being placed in confinement are somewhat different from the factors justifying an immediate search at the time and place of arrest.

The governmental interests underlying a station-house search of the arrestee's person and possessions may in some circumstances be even greater than those supporting a search immediately following arrest. Consequently, the scope of a station-house search will often vary from that made at the time of arrest. Police conduct that would be impractical or unreasonable—or embarrassingly intrusive—on the street can more readily—and privately—be performed at the station. For example, the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street, but the practical necessities of routine jail administration may even justify taking a prisoner's clothes before confining him, although that step would be rare. This was made clear in *United States* v. *Edwards,* 415 U. S. 800, 804 (1974): "With or without probable cause, the authorities were entitled [at the station house] not only to search [the

arrestee's] clothing but also to take it from him and keep it in official custody."[2]

At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed. A range of governmental interests supports an inventory process. It is not unheard of for persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the station house. A standardized procedure for making a list or inventory as soon as reasonable after reaching the station house not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person. Arrested persons have also been known to injure themselves—or others—with belts, knives, drugs, or other items on their person while being detained. Dangerous instrumentalities—such as razor blades, bombs, or weapons—can be concealed in innocent-looking articles taken from the arrestee's possession. The bare recital of these mundane realities justifies reasonable measures by police to limit these risks—either while the items are in police possession or at the time they are returned to the arrestee upon his release. Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure. It is immaterial whether the police actually fear any particular package or container; the need to protect against such risks arises independently of a particular officer's subjective concerns. See *United States* v. *Robinson, supra,* at 235. Finally, inspection of an arrestee's personal property may assist the police in ascertaining or verifying his identity. See 2 W. LaFave, Search and Seizure § 5.3, pp. 306–307 (1978). In short,

---

[2] We were not addressing in *Edwards,* and do not discuss here, the circumstances in which a strip search of an arrestee may or may not be appropriate.

every consideration of orderly police administration benefiting both police and the public points toward the appropriateness of the examination of respondent's shoulder bag prior to his incarceration.

Our prior cases amply support this conclusion. In *South Dakota* v. *Opperman*, 428 U. S. 364 (1976), we upheld a search of the contents of the glove compartment of an abandoned automobile lawfully impounded by the police. We held that the search was reasonable because it served legitimate governmental interests that outweighed the individual's privacy interests in the contents of his car. Those measures protected the owner's property while it was in the custody of the police and protected police against possible false claims of theft. We found no need to consider the existence of less intrusive means of protecting the police and the property in their custody—such as locking the car and impounding it in safe storage under guard. Similarly, standardized inventory procedures are appropriate to serve legitimate governmental interests at stake here.

The Illinois court held that the search of respondent's shoulder bag was unreasonable because "preservation of the defendant's property and protection of police from claims of lost or stolen property, 'could have been achieved in a less intrusive manner.' For example, . . . the defendant's shoulder bag could easily have been secured by sealing it within a plastic bag or box and placing it in a secured locker." 99 Ill. App. 3d, at 835, 425 N. E. 2d, at 1386 (citation omitted). Perhaps so, but the real question is not what "could have been achieved," but whether the Fourth Amendment *requires* such steps; it is not our function to write a manual on administering routine, neutral procedures of the station house. Our role is to assure against violations of the Constitution.

The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means. In *Cady* v. *Dombrowski*, 413 U. S. 433 (1973), for example, we upheld the search of

the trunk of a car to find a revolver suspected of being there. We rejected the contention that the public could equally well have been protected by the posting of a guard over the automobile. In language equally applicable to this case, we held, "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." *Id.*, at 447. See also *United States* v. *Martinez-Fuerte*, 428 U. S. 543, 557, n. 12 (1976). We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the station house. It is evident that a station-house search of every item carried on or by a person who has lawfully been taken into custody by the police will amply serve the important and legitimate governmental interests involved.

Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit. Only recently in *New York* v. *Belton*, 453 U. S. 454 (1981), we stated that " '[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " *Id.*, at 458, quoting *Dunaway* v. *New York*, 442 U. S. 200, 213–214 (1979). See also *United States* v. *Ross*, 456 U. S. 798, 821 (1982).

Applying these principles, we hold that it is not "unreasonable" for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures.[3]

---

[3] The record is unclear as to whether respondent was to have been incarcerated after being booked for disturbing the peace. That is an appropriate inquiry on remand.

The judgment of the Illinois Appellate Court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, concurring in the judgment.

I agree that the police do not need a warrant or probable cause to conduct an inventory search prior to incarcerating a suspect, and I therefore concur in the judgment. The practical necessities of securing persons and property in a jailhouse setting justify an inventory search as part of the standard procedure incident to incarceration.

A very different case would be presented if the State had relied solely on the fact of arrest to justify the search of respondent's shoulder bag. A warrantless search incident to arrest must be justified by a need to remove weapons or prevent the destruction of evidence. See *United States* v. *Robinson,* 414 U. S. 218, 251 (1973) (MARSHALL, J., dissenting); *Chimel* v. *California,* 395 U. S. 752, 763 (1969); *United States* v. *Rabinowitz,* 339 U. S. 56, 72 (1950) (Frankfurter, J., dissenting). Officer Mietzner did not in fact deem it necessary to search the bag when he arrested respondent, and I seriously doubt that such a search would have been lawful. A search at the time of respondent's arrest could not have been justified by a need to prevent the destruction of evidence, for there is no evidence or fruits of the offense—disturbing the peace—of which respondent was suspected. Moreover, although a concern about weapons might have justified seizure of the bag, such a concern could not have justified the further step of searching the bag following its seizure. Cf. *United States* v. *Chadwick,* 433 U. S. 1, 15 (1977); *id.,* at 17, and n. 2 (BRENNAN, J., concurring).