No. 84-67

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

       Plaintiff and Appellant,

  -vs-

ROBERTO SIERRA,

       Defendant and Respondent.

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Mike Greely, Attorney General, Helena, Montana
Mark Murphy, Asst. Atty. General, Helena
Wm. Nels Swandal, County Attorney, Livingston,
Montana

    For Respondent:

        Karl Knuchel, Public Defender, Livingston, Montana

Submitted on Briefs: June 14, 1984

Decided: January 4, 1985

Filed: JAN 4 - 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The State of Montana appeals from an order of the Park County District Court suppressing part of the evidence seized from defendant after he and another friend had been arrested and taken to the police station to be detained until it could be determined whether they were legally in the United States. The State seized some marijuana from defendant as he was emptying his pockets at the police station pursuant to police orders, and the court held that this evidence was admissible. However, the State also had ordered the defendant to open his suitcase, and when he did the State discovered a large quantity of marijuana in the suitcase. Defendant moved to suppress this evidence, a felony amount, and the trial court suppressed this evidence, holding that the seizure violated defendant's right to privacy guaranteed by Art. II, § 10 of the Montana Constitution. We affirm.

The State, relying primarily on decisions of the United States Supreme Court, argues that the seizure of the evidence does not violate defendant's right to privacy under Art. II, § 10 of the Montana Constitution. The defendant argues that the pre-incarceration inventory of the contents of the arrestee's suitcase does violate Art. II, §§ 10 and 11 of the Montana Constitution.

The defendant, Roberto Sierra, is a Cuban who speaks no English, but is legally in the United States and requires no so-called "green card." On the day in question he carried identification with him which included a form I-91 and a social security card which bore his name. His companion, Jose Juarez, a Mexican, speaks only limited English but

carried no identification showing his status and whether he is legally in the United States.

During the early evening hours of August 7, 1983, defendant and his companion were walking along Park Street in Livingston and were observed by deputy sheriff Dennis Frawley. The deputy thought the appearance of these two men might mean they were illegal aliens, so he stopped them and questioned Jose Juarez. Juarez, speaking only limited English, could produce no identification authorizing him to be in the United States. Deputy Frawley took Juarez into custody and then approached the defendant and asked for identification. Although defendant could speak no English, he did produce photocopies of a form I-91 and a social security card which bore his name. The deputy arrested defendant also and took them both to the Park County Law Enforcement Center where they were booked and placed in jail.

During the booking procedure Frawley and three other deputies ordered defendant to empty his pockets. When defendant did so he removed a small amount of a substance which looked like and later tested to be marijuana. Immediately afterwards, a suitcase carried by Sierra at the time of his arrest, was opened and its contents were examined. Approximately seven pounds of marijuana were found in the suitcase. At no time before the police discovered the contraband did they attempt to secure an interpreter so that defendant could be advised of his rights or asked what he wanted done with the suitcase and its contents.

The trial court held that the marijuana seized from defendant's pockets was admissible. But as to the marijuana seized from defendant's suitcase the trial court ruled that its discovery was not incident to a lawful arrest and so was

improper. The court, in explaining his ruling, concluded that defendant had a more expansive right to privacy than that guaranteed to him by the Fourth Amendment, and therefore the search of his suitcase was unconstitutional. We hold that less intrusive means must be used in these circumstances, that they were not used here, and that in opening defendant's suitcase without a search warrant, the police violated his privacy rights.

In the case of State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131, Justice Harrison, speaking for an unanimous Court, expressly held that an inventory search is "a substantial infringement upon individual privacy" and therefore it is subject to the right of privacy provision (Art. II, § 10), as well as the search and seizure provision (Art. II, § 11), of the Montana Constitution, 174 Mont. at 517, 571 P.2d at 1133-1134. This Court has never held that the right of privacy provision makes it any more difficult to obtain a search warrant than was the case before, but we have of course recognized that search and seizure provisions do not undo the right to privacy provisions of our Constitution.

The State relies primarily on the United States Supreme Court decision of Illinois v. Lafayette (1983), ___ U.S. ___, 103 S.Ct. 2605, 77 L.Ed.2d 65, where an inventory search after a lawful arrest for disturbing the peace was upheld on several grounds as promoting legitimate governmental interests that override the interests of the individual. Those legitimate interests were: first, safeguarding the arrested person's property; second, protecting law enforcement from false claims of loss or theft; third, danger from contents of uninventoried packages; and fourth, to assist in identifying arrested persons.

Though we agree ~~cannot argue~~ that these are legitimate govern-
mental interests, we cannot agree that their existence may
permit an inventory search in all circumstances. In State v.
Sawyer, supra, we expressly recognized that in many of these
circumstances the police should use the least intrusive means
possible for conducting an inventory search. In fact, in
applying our own Constitution, we expressly rejected the
United States Supreme Court's holding in South Dakota v.
Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d
1000, where, in upholding the inventory search of an aban-
doned automobile, the United States Supreme Court found no
need to consider the existence of less intrusive means of
protecting the police and the property in their custody.
Locking the door and impounding it in safe storage under
guard was not even considered as a less intrusive means. But
in State v. Sawyer, supra, we expressly rejected this holding
in favor of a less intrusive means interpretation based on
our own Constitution.

As long as we guarantee the minimum rights guaranteed by
the United States Constitution, we are not compelled to march
lock-step with pronouncements of the United States Supreme
Court if our own constitutional provisions call for more
individual rights protection than that guaranteed by the
United States Constitution. And in State v. Saywer, in
rejecting the rationale of South Dakota v. Opperman, supra,
we have given a perfect example of our unwillingness to march
lock-step with the latest pronouncements of the United States
Supreme Court where it is not required as a matter of federal
constitutional law.

A less-intrusive means rule is by no means unworkable.
In adopting a less-intrusive means test for inventory

searches, the Alaska Supreme Court in Reeves v. State (Alaska 1979), 599 P.2d 727, held that the search of an opaque balloon found on the arrestee's person by a correctional officer exceeded the constitutionally permissible scope of a pre-incarceration inventory search. The court noted as we have done before, that their state constitutional guarantee against unreasonable searches and seizures was broader in scope than the Fourth Amendment to the United States Constitution. This broadened scope was recognized to be due at least in part to Art. I, § 22 of the Alaska Constitution, the right to privacy provision.

In summarizing the opinion of the Court, Justice Rabinowitz directed the statements ~~directly~~ at an inventory search after an arrest:

> ". . . a pre-incarceration inventory search is an exception to the warrant requirement, where it is conducted to further the governmental purposes recognized above and is limited to the extent necessary to respect Alaska's constitutional guarantee against unreasonable searches and seizures. The search of an arrestee's person should be no more intensive than reasonably necessary to prevent the entry of weapons, illegal drugs, and other contraband or other potentially dangerous items into the jail. Any items taken from the arrestee's possession in this search may not be further searched or opened except pursuant to a search warrant or another recognized exception to the warrant requirement applicable in the circumstances. Finally, the inventory conducted shall consist of a cataloging of the arrestee's property thus seized <u>and may not, without a specific request from the arrestee, extend to a search and inventory of the contents of any object, closed or sealed container, luggage, briefcase or package.</u> We believe that a pre-incarceration search thus limited both adequately protects the reasonable interests of the state and appropriately respects an arrestee's reasonable expectation of privacy." (599 P.2d at 737-738. Emphasis added.)

We agree with this holding and ~~adopt~~ its ~~thrust and~~ rationale. Here the police made no effort to secure an interpreter to ensure that defendant was properly advised of

his rights and questioned regarding any special handling his property might require. An interpreter was readily available to the police in the person of the wife of one of the deputies, and she spoke fluent Spanish. These alternatives were readily available to the police and because they did not pursue them is no ground to now justify their search of the defendant's suitcase.

We have here a warrantless search of a defendant's suitcase. He was in custody because the police officer was not satisfied that he had produced proper identification, even though there was no duty of this person to produce nonrequired identification in order to avoid arrest. At the time of his arrest he was doing nothing illegal, but to the police officer he looked strange, that is, like an alien. It so happened the police officer was wrong. Defendant was legally in the United States. Here the defendant, upon being ordered to empty his pockets, did so, and in doing so, revealed a small amount of marijuana. Perhaps this would constitute probable cause to obtain a search warrant for the contents of the defendant's suitcase, perhaps not, but the fact is that the police did not even make an effort to obtain a search warrant. Instead, based on their custom to inventory everything in a defendant's possession when taken into custody, they opened the suitcase and found the marijuana. As we have already held, less intrusive means were available to the police to handle the suitcase and its possible contents.

The order suppressing the evidence is affirmed.

Daniel J. Shea
Justice

- 7 -

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice Fred J. Weber dissents as follows:

I dissent from the opinion of the majority which holds that the inventory search of defendant's suitcase violated his privacy rights and rendered the evidence seized inadmissible.

The District Court expressly concluded that there was probable cause to arrest defendant and take him into custody. This conclusion is not disputed on appeal.

The United States Supreme Court has held that an inventory search after a valid arrest is a reasonable search which does not require a warrant. Illinois v. Lafayette (U.S. June 20, 1983), slip op. at p. 3. The Court emphasized that the justification for such searches does not rest upon probable cause, but rather is an incidental administrative step following arrest and preceding incarceration. Slip op. at pp. 3-4.

The Court described the justification for the inventory search:

"At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed. A range of governmental interests support an inventory process. It is not unheard of for persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the stationhouse. A standardized procedure for making a list or inventory as soon as reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person. Arrested persons have also been known to injure themselves--or others--with belts, knives, drugs or other items on their person while being detained. Dangerous instrumentalities--such as razor blades, bombs, or weapons--can be concealed in innocent-looking articles taken from the arrestee's possession. The bare recital of these mundane realities justifies reasonable measures by police to limit these risks--either while the items are in police possession or at the time they are returned to the arrestee upon his release. Examining all the items removed from the arrestee's person or possession

and listing or inventorying them is an entirely reasonable administrative procedure. It is immaterial whether the police actually fear any particular package or container; the need to protect against such risks arises independent of a particular officer's subjective concerns. See United States v. Robinson, supra, 414 U.S., at 235." Slip op. at p. 6.

I find the reasoning of Lafayette to be compelling and would follow the holding of the Supreme Court in that case. I would reverse the District Court's order suppressing evidence and remand the cause for further proceedings.

_____
Justice

Mr. Chief Justice Frank I. Haswell and Mr. Justice L.C. Gulbrandson concur with Mr. Justice Fred J. Weber's dissent.

_____
Chief Justice

_____
Justice