No. 86-347

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

ARTHUR JOSEPH LAMERE,

Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
John Paulson, Asst. Atty. General, Helena
David G. Rice, County Attorney, Havre, Montana

For Respondent:

Mark Suagee, Havre, Montana

_____

Submitted on Briefs: Nov. 25, 1986

Decided: April 7, 1987

Filed: APR 7 - 1987

_Ethel M. Harrison_
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by the State of Montana from an order issued by the Twelfth Judicial District Court in and for Hill County granting defendant's motion to suppress evidence seized by the Havre police during an inventory search of defendant's person prior to his incarceration.

We reverse the order of the District Court.

The sole issue on appeal is whether the District Court erred in granting defendant's motion to suppress evidence.

Both parties stipulated to the following facts from which the District Court reached its decision:

> Defendant Lamere was lawfully arrested for driving under the influence, in violation of § 61-8-401, MCA, on September 2, 1985 [correction to September 7, 1985] at approximately 2:00 a.m. in Havre, Hill County, Montana, by Laurel Zorn of the Havre Police Department.
>
> At the station following the arrest, Officer Zorn removed two items of personal property from the defendant as part of an inventory search at the police station. Both of these items were opened, searched and evidence seized therefrom.
>
> The first item opened was a leather pouch which had been removed from the inside pocket of defendant's jacket which he was wearing at the time. Police zipped open this pouch, searched it and seized the contents. The contents included alleged drug paraphernalia and a white powder in the vial which field tested positive as cocaine.
>
> The second item taken from the defendant was a bank money bag which was removed from the defendant's pants leg in a pat

> down search following seizure of the
> alleged cocaine. The police zipped open
> this bag and searched it producing two
> small bags of alleged marijuana.
>
> Both of these searches and seizures were
> effected without a search warrant
> although there was opportunity to make
> application for one. Both searches were
> done as part of the standard inventory
> procedure used by the Havre Police
> Department. Defendant did not consent to
> either search.

In addition to these facts we add that an information was filed charging defendant with two counts of criminal possession of dangerous drugs and one count of criminal possession of drug paraphernalia. Defendant filed a motion to suppress all items seized by the police during the search. The District Court granted defendant's motion to suppress and the State now appeals from this decision to suppress.

The District Court concluded that the removal of defendant's two containers and the opening and searching of them without the defendant's consent after his arrest but prior to his incarceration violated his right to be free from unreasonable seach and seizure under the United States and Montana Constitutions. The District Court erroneously found that the facts of the case were governed by the reasoning stated in State v. Sierra (Mont. 1985), 692 P.2d 1273, 42 St.Rep. 106.

In Sierra, the police removed a closed container of property--a small suitcase--from the defendant as part of a routine inventory search prior to incarceration. They opened and searched it without a warrant. The non-warrant search of the small, closed container for inventory purposes was found to be in violation of defendant's rights.

Appellant State requests this Court to reconsider its holding in State v. Sierra in light of decisions in other jurisdictions to follow the United States Supreme Court's decision in Illinois v. Lafayette (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65. See People v. Decker (1986), 222 Cal.Rptr. 689; Henderson v. State (Ark. 1985), 699 S.W.2d 419; State v. Cole (Utah 1983), 674 P.2d 119.

While not cited by either brief due to its recent release, the decision by the United States Supreme Court, Colorado v. Bertine, No. 85-889, January 14, 1987, reinforces Illinois v. Lafayette, supra. In Bertine, police officers in Boulder, Colorado arrested the petitioner, Steven Lee Bertine, for driving while under the influence of alcohol. After he was taken into custody, and before the arrival of a tow truck to take Bertine's van to an impoundment lot, another officer while acting in accordance with local police procedure, inventoried the van's contents. The officer opened a closed backpack in which he found controlled substances, cocaine paraphernalia, and a large amount of cash. Prior to Bertine's trial on charges that included unlawful possession of cocaine with intent to dispense, sell, and distribute, a state trial court granted Bertine's motion to suppress the evidence found during the inventory search. The Colorado trial court ruled that the search did not violate Bertine's rights under the Fourth Amendment, but held the search violated the Colorado Constitution. The Colorado Supreme Court affirmed, but premised its ruling on the United States Constitution. The United States Supreme Court reversed, holding that the Fourth Amendment did not prevent the state from proving criminal charges with evidence discovered during the inventory of Bertine's van.

The State argues, and we agree, that City of Helena v. Lamping (Mont. 1986), 719 P.2d 1245, 43 St.Rep. 901, should

- 4 -

have governed the District Court's decision and not State v. Sierra, supra. In Lamping the defendant was lawfully arrested for unrelated offenses and taken to the county jail to be jailed. Prior to incarceration the jailer inventoried Lamping's personal property. While searching him the jailer took an open cigarette package out of Lamping's shirt pocket and discovered a hand rolled marijuana cigarette in it. Lamping was charged with possession of dangerous drugs. In Lamping, we pointed out that dangerous instrumentalities can be concealed in innocent looking articles taken from an arrestee's possession and the State has a compelling interest in protecting prisoners from potential dangers and must also protect the defendant and the officer by accounting for any money the person has. We concluded that the inventory search in Lamping was not unreasonable for failure to secure a search warrant.

We conclude that the theory of Lamping is applicable here. We further point out that in Bertine, the Court analyzed the inventory procedure in a manner which we find directly applicable to the present case:

> In the present case, as in Opperman and Lafayette, there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation. In addition, the governmental interests justifying the inventory searches in Opperman and Lafayette are nearly the same as those which obtain here. In each case, the police were potentially responsible for the property taken into their custody. By securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to police or

> others that may have been posed by the
> property.

Bertine, supra, at 5.

We adopt the Bertine rationale for inventory search and conclude that in the present case, the order suppressing evidence should be reversed and the case returned to the District Court for trial.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_[signature]_

_R. C. [signature]_

Justices

Mr. Justice William E. Hunt, Sr., dissenting:


I strongly dissent from the majority opinion and argue two separate authorities should control this matter. First I argue that State v. Sierra (Mont. 1985), 42 St.Rep. 106, 692 P.2d 1273 should be determinative of this case. The majority opinion overturns Sierra by its blanket adoption of City of Helena v. Lamping (Mont. 1986), 43 St.Rep. 901, 719 P.2d 1245, and Illinois v. Lafayette (1983), 462 U.S. 640, 77 L.Ed.2d 65, 103 S.Ct. 2605 and the United State Supreme Court decision of Colorado v. Bertine, U.S. Slip Opinion II, Jan. 14, 1987 to the facts of this case, and in so doing ignores the mandates of our Montana Constitution's right of privacy provision.

Lamping appears to rely on a 1981 Supreme Court case U.S. v. Monclavo-Cruz (9th Cir. 1981), 662 F.2d 1285 for its authority. The majority erroneously adopts Lamping as controlling law in this case. The contradictions within the Lamping opinion and now this majority opinion are glaring and problematic. It is unclear precisely what was upheld in Lamping and it is unclear in this majority opinion what aspects of Lamping are being reaffirmed here. The rationale in the Monclavo-Cruz decision upon which Lamping relied regarding inventory searches was that searches of the person could be distinguished from searches of possessions within the immediate control of the arrestee-the later having a greater expectation of privacy. The State in the present case argues that the Supreme Court case, Lafayette, removed this distinction by now allowing a warrantless inventory search of any container or article in an arrestee's possession if it is done as a routine administrative procedure incident to incarceration. The majority agree with the State's claim that Lamping confirmed this Court's

agreement with Lafayette which, in my opinion, Lamping does not do. Lamping utilizes the Monclavo-Cruz distinctions which Lafayette had already done away with. Lamping states:

> We concur with this distinction drawn between searches of the person and searches of possessions within an arrestee's immediate control . . . 43 St.Rep. at 903, 719 P.2d at 1247.

In reality this distinction in Monclavo-Cruz did not even go to the discussion of inventory search issues but addressed searches incident to an arrest. Lamping also adds another distinction. The defendant's cigarette pack in his shirt was open and the court held:

> . . . when a container is open, the intrusion is justified to protect the other prisoners from harm. The contents of an unsecured package should be inventoried separately . . . Id. at 904, 1248.

Thus Lamping appears to premise its decision on what the U.S. Supreme Court indicated is an out-moded federal distinction between possessions on and off the person as well as whether a container is open or closed. These premises contradict the Lafayette and Bertine cases which the majority now rely on.

Regardless of the convoluted reasoning relied on in citing the Lamping decision, the majority is in error here in a more fundamental way.

It is my opinion that the framers of our Montana Constitution provided a more expansive right of privacy than either Lafayette or Bertine indicate is provided for in the penumbras of our federal Constitution. Sierra was decided by this Court on this very issue and bears out this position. See also State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131.

The appellant State requests this Court to reconsider its holding in Sierra in light of decisions in other jurisdictions to follow Lafayette. That is not necessary

since the _Sierra_ court did fully consider the inventory search issue raised there as well as similar issues recently raised in _Bertine_. The _Sierra_ court concluded the non-warrant search of the arrestee's small closed suitcase not on defendant's person conducted for inventory purposes prior to his incarceration was a violation of his right of privacy guaranteed by Art. II, Sections 10 and 11 of the Montana Constitution since, under those circumstances, less intrusive means were available to accomplish the task of inventorying the arrestee's belongings. That search was therefore held to be unreasonable.

The right to privacy provision of the Montana Constitution affords an individual greater protection than its federal counterpart as interpreted by recent federal case law. As such, ". . . we are not compelled to march lock step with pronouncements of the United States Supreme Court if our own constitutional provisions call for more individual rights protections than that guaranteed by the U.S. Constitution." _Sierra_ at 1276.

Again we quote the _Sierra_ court's adoption of the holding in Reeves v. State (Alaska 1979), 599 P.2d 727, and find it applicable to this case:

> The search of an arrestee's person should be no more intensive than reasonably necessary to prevent the entry of weapons, illegal drugs, and other contraband or other potentially dangerous items into the jail. Any items taken from the arrestee's possession in this search may not be further searched or opened except pursuant to a search warrant or another recognized exception to the warrant requirement applicable in the circumstances. Finally, the inventory conducted shall consist of a cataloging of the arrestee's property thus seized <u>and may not, without a specific request from the arrestee, extend to a search and inventory of the contents of any object, closed or sealed container, luggage, briefcase, or package</u>. We believe that a pre-incarceration search thus limited both adequately protects the reasonable interests of the state and appropriately

respects an arrestee's reasonable expectation of privacy. (Emphasis added.)

599 P.2d at 737-738.

We have also dealt with this issue in State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131. There we held that the U.S. Fourth Amendment issue need not be reached in a case involving an inventory search of an automobile without a warrant and seizure of amphetamine pills from under the seat of the automobile. This Court found the situation was governed by the Montana Constitution's right of privacy provision.

The following quote from that case is equally applicable here:

We need not consider the Fourth Amendment issue because we view the Montana Constitution to afford an individual greater protection in this instance than is found under the Fourth Amendment in Opperman.

The 1972 Montana Constitution, Art. II, Sections 10 and 11, provided:

Section 10. Right of privacy. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

Section 11. Searches and seizures. The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.

The importance of the right of individual privacy to the framers of the Montana Constitution is obvious from these provisions. This Court has previously noted the significance of the explicit guarantee of the right of individual privacy contained in Section 10, as a comparable provision exists in the United States Constitution. State v. Coburn, 165 Mont. 488, 495, 530 P.2d 442 (1974),

It is also clear that an inventory search such as the one considered here is a significant invasion of individual privacy, the inventory search must meet the "reasonableness" and "compelling state interest" standards of the Montana Constitution. . . . (Emphasis added.)

Id. at 517, 1133-1134.

In the instant case, the Havre police had a legitimate governmental interest in performing an inventory search of defendant prior to incarceration. No evidence was presented that the police station's storage facility was not secure or could not reasonably be made secure, nor that the two containers could not have been well protected from theft or destruction without searching them. Further the police had no reason to believe the containers held weapons or explosives so a search of their contents was not justified on that count.

Because of this State's more expansive right of privacy provision as discussed in Sierra and in Sawyer, the existence of these legitimate governmental interests does not permit an inventory search in these circumstances since the police could have used less intrusive means to inventory the defendant's belongings.

The second issue is equally determinative of this case.

Unlike Lamping, there were no open containers at issue. The defendant was carrying two closed, zippered containers on his person. The police found the first container on the inside of defendant's jacket pocket. This container should not have been searched without defendant's consent but it was. It could easily have been sealed and placed in storage or treated with less intrusive means unless other circumstances were shown establishing probable cause to do an investigatory search of the container.

The second container was discovered after the first one had been opened and the contents observed. This is the

precise situation which suggests that the inventory procedure was a "pretext concealing an investigatory police motive" as forbidden in South Dakota v. Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092 and other cases. The existence of such a possible pretext drastically changes the nature of this search from a warrantless routine inventory search into an investigatory search which mandates a warrant, the strictest Fourth Amendment protections of a defendant in this situation.

The police were not foreclosed from discovering the contents of these containers if they could establish probable cause to search the containers. After the discovery of the money bag in defendant's pants, an arguably suspicious situation, application for a search warrant could have been made by the police. No attempt was made to obtain a warrant at any stage in these proceedings.

This possible pretext concealing an investigatory police motive is an elemental prohibition and an ever constant threat to any defendant's Fourth Amendment rights. Even the recent Bertine case which was relied on by the majority upheld the particular inventory search in part because "There was no showing . . . that the police, who were following standardized caretaking procedures acted in bad faith or for the sole purpose of investigation or on the suspicion of evidence of criminal activity." U.S. Slip Opinion II, Jan. 14, 1987. Therefore, on this issue also the majority erred by not upholding the lower court's decision.

_____
Justice

I concur in the foregoing dissent:

_____
Justice John C. Sheehy

- 12 -