MR. JUSTICE HUNT,
dissenting:
I strongly dissent from the majority opinion and argue two separate authorities should control this matter. First, I argue that State v. Sierra (Mont. 1985), [214 Mont. 472,] 42 St.Rep. 106, 692 P.2d 1273 should be determinative of this case. The majority opinion overturns Sierra by its blanket adoption of City of Helena v. Lamping (Mont.1986), [221 Mont. 370,] 43 St.Rep. 901, 719 P.2d 1245, and Illinois v. Lafayette (1983), 462 U.S., 640, 103 S.Ct. 2605, 77 L.Ed.2d 65, and the United States Supreme Court decision of Colorado v. Bertine, (1987) _ U.S. _, 107 S.Ct. 738, 93 L.Ed.2d 739, to the facts of this case, and in so doing ignores the mandates of our Montana Constitution’s right of privacy provision.
Lamping appears to rely on a 1981 Supreme Court case U.S. v Monclavo-Cruz (9th Cir. 1981), 662 F.2d 1285 for its authority. The majority erroneously adopts Lamping as controlling law in this case. The contradictions within the Lamping opinion and now this majority opinion are glaring and problematic. It is unclear precisely what was upheld in Lamping and it is unclear in this majority opinion what aspects of Lamping are being reaffirmed here. The rationale in the Monclavo-Cruz decision upon which Lamping relied regarding inventory searches was that searches of the person could be distinguished from searches of possessions within the immediate control of the arrestee — the later having a greater expectation of privacy. The State in the present case argues that the Supreme Court case, Lafayette, removed this distinction by now allowing a warrantless inventory search of any container or article in an arrestee’s possession if it is done as a routine administrative procedure incident to incarceration. The majority agree with the State’s claim that Lamping confirmed this Court’s agreement with Lafayette which, in my opinion, Lamping does not do. Lamping utilizes the Monclavo-Cruz distinctions which Lafayette had already done away with. Lamping states:
“We concur with this distinction drawn between searches of the person and searches of possessions within an arrestee’s immediate control . . .” 43 St.Rep. at 903, 719 P.2d at 1247.
In reality this distinction in Monclavo-Cruz did not even go to the discussion of inventory search issues but addressed searches inci *328 dent to an arrest. Lamping also adds another distinction. The defendant’s cigarette pack in his shirt was open and the court held:
“. . . when a container is open, the intrusion is justified to protect the other prisoners from harm. The contents of an unsecured package should be inventoried separately. . .” Id. at 904, 1248.
Thus Lamping appears to premise its decision on what the U.S. Supreme Court indicated is an out-moded federal distinction between possession on and off the person as well as whether a container is open or closed. These premises contradict the Lafayette, and Bertine cases which the majority now rely on.
Regardless of the convoluted reasoning relied on in citing the Lamping decision, the majority is in error here in a more fundamental way.
It is my opinion that the framers of our Montana Constitution provided a more expansive right of privacy than either Lafayette, or Bertine indicate is provided for in the penumbras of our federal Constitution. Sierra was decided by this Court on this very issue and bears out this position. See also State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131.
The appellant State requests this Court to reconsider its holding in Sierra in light of decisions in other jurisdictions to follow Lafayette. That is not necessary since the Sierra Court did fully consider the inventory search issue raised there as well as similar issues recently raised in Bertine. The Sierra court concluded the non-warrant search of the arrestee’s small closed suitcase not on defendant’s person conducted for inventory purposes prior to his incarceration was a violation of his right of privacy guaranteed by Art. II, Sections 10 and 11 of the Montana Constitution since, under those circumstances, less intrusive means were available to accomplish the task of inventorying the arrestee’s belongings. That search was therefore held to be unreasonable.
The right to privacy provision of the Montana Constitution affords an individual greater protection than its federal counterpart as interpreted by recent federal case law. As such, “. . . we are not compelled to march lock step with pronouncements of the United States Supreme Court if our own constitutional provisions call for more individual rights protections than that guaranteed by the U.S. Constitution.” Sierra at 1276.
Again we quote the Sierra court’s adoption of the holding in Reeves v. State (Alaska 1979), 599 P.2d 727, and find it applicable to this case:
*329 “The search of an arrestee’s person should be no more intensive than reasonably necessary to prevent the entry of weapons, illegal drugs, and other contraband or other potentially dangerous items into the jail. Any items taken from the arrestee’s possession in this search may not be further searched or opened except pursuant to a search warrant or another recognized exception to the warrant requirement applicable in the circumstances. Finally, the inventory conducted shall consist of a cataloging of the arrestee’s property thus seized and may not, without a specific request from the arrestee, extend to a search and inventory of the contents of any object, closed or sealed container, luggage, briefcase, or package. We believe that a pre-incarceration search thus limited both adequately protects the reasonable interests of the state and appropriately respects an arrestee’s reasonable expectation of privacy. (Emphasis added.)”
599 P.2d at 737-738.
We have also dealt with this issue in State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131. There we held that the U.S. Fourth Amendment issue need not be reached in a case involving an inventory search of an automobile without a warrant and seizure of amphetamine pills from under the seat of the automobile. This Court found the situation was governed by the Montana Constitution’s right of privacy provision.
The following quote from that case is equally applicable here:
“We need not consider the Fourth Amendment issue because we view the Montana Constitution to afford an individual greater protection in this instance than is found under the Fourth Amendment in Opperman.
“The 1972 Montana Constitution, Art. II, Sections 10 and 11, provided:
“Section 10. Right of privacy. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.
“Section 11. Searches and seizures. The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.
“The importance of the right of individual privacy to the framers of the Montana Constitution is obvious from these provisions. This *330 Court has previously noted the significance of the explicit guarantee of the right of individual privacy contained in Section 10, as a comparable provision exists in the United States Constitution. State v. Coburn, 165 Mont. 488, 495, 530 P.2d 442 (1974).
“It is also clear that an inventory search such as the one considered here is a significant invasion of individual privacy, the inventory search must meet the “reasonableness” and “compelling state interest” standards of the Montana Constitution .... (Emphasis added.)”
Id. at 517, 1133-1134.
In the instant case, the Havre police had a legitimate governmental interest in performing an inventory search of defendant prior to incarceration. No evidence was presented that the police station’s storage facility was not secure or could not reasonably be made secure, nor that the two containers could not have been well protected from theft or destruction without searching them. Further the police had no reason to believe the containers held weapons or explosives so a search of their contents was not justified on that count.
Because of this State’s more expansive right of privacy provision as discussed in Sierra and in Sawyer, the existence of these legitimate governmental interests does not permit an inventory search in these circumstances since the police could have used less intrusive means to inventory the defendant’s belongings.
The second issue is equally determinative of this case.
Unlike Lamping, there were no open containers at issue. The defendant was carrying two closed, zippered containers on his person. The police found the first container on the inside of defendant’s jacket pocket. This container should not have been searched without defendant’s consent but it was. It could easily have been sealed and placed in storage or treated with less intrusive means unless other circumstances were shown establishing probable cause to do an investigatory search of the container.
The second container was discovered after the first one had been opened and the contents observed. This is the precise situation which suggests that the inventory procedure was a “pretext concealing an investigatory police motive” as forbidden in South Dakota v. Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, and other cases. The existence of such a possible pretext drastically changes the nature of this search from a warrantless routing inventory search into an investigatory search which mandates a warrant, *331 the strictest Fourth Amendment protections of a defendant in this situation.
The police were not foreclosed from discovering the contents of these containers if they could establish probable cause to search the containers. After the discovery of the money bag in defendant’s pants, an arguably suspicious situation, application for a search warrant could have been made by the police. No attempt was made to obtain a warrant at any stage in these proceedings.
This possible pretext concealing an investigatory police motive is an elemental prohibition and an ever constant threat to any defendant’s Fourth Amendment rights. Even the recent Bertine case which was relied on by the majority upheld the particular inventory search in part because “There was no showing . . . that the police, who were following standardized caretaking procedures acted in bad faith or for the sole purpose of investigation or on the suspicion of evidence of criminal activity.” (1987) __ U.S. __, 107 S.Ct. 738, 93 L.Ed.2d 739. Therefore, on this issue also the majority erred by not upholding the lower court’s decision.
MR. JUSTICE SHEEHY, concurs in the foregoing dissent.