MR. JUSTICE HUNT,
dissenting:
I strongly disagree with the majority’s affirmation of the first issue presented. Unfortunately, law in this state, as well as nationally, has *115 reflected a trend toward diminishing the individual rights of suspected criminals. The police procedure in this case goes beyond that which can be tolerated under the guise of a reasonable inventory search or a search incident to arrest.
In State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131, a unanimous court held that an inventory search is a substantial infringement upon individual privacy and therefore it is subject to the right of privacy provision, as well as the search and seizure provision of the Montana Constitution.
The majority agrees that using the ultraviolet light to look for detection powder in Holzapfel’s wallet amounted to a search. The majority then relies upon Lamping, 719 P.2d 1245, in finding that the search fell within acceptable privacy limits following a lawful arrest.
To check the contents of defendant’s wallet with respect to the amount of money contained therein would have been permissible as part of an inventory search. See State v. Armstrong (1980), 189 Mont. 407, 616 P.2d 341. To inventory the amount of cash carried on a defendant before incarceration does not go beyond a person’s reasonable expectation of privacy.
Likewise, the wallet in and of itself would have been admissible as evidence seized incident to lawful arrest. See State v. Leavens (Mont. 1986), [222 Mont. 473,] 723 P.2d 236, 238, 43 St.Rep. 1431, 1434.
David Holzapfel was arrested at his attorney’s office, then taken to the jailhouse to be booked. His wallet was in the jailor’s possession when agent McKay retrieved it and searched it with an ultraviolet light. It is intellectually dishonest to call such a procedure a lawful “search incident to arrest.”
The United States Supreme Court has faced a similar question in Cupp v. Murphy (1973), 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900. It is helpful to see what this country’s highest court said in delineating the boundaries beyond which law enforcement cannot exceed when conducting searches and seizures.
In Cupp, the defendant voluntarily appeared at the police station to be questioned about the strangulation of his estranged wife. During questioning a dark spot underneath defendant’s fingernail was noticed. Upon request to look more closely at the spot, defendant hid his hands in his pockets, rubbed them together and refused to cooperate with the police. Against defendant’s will, the police scraped under defendant’s nail, obtaining what was later identified as blood, skin and nightgown fibers from his wife’s body. In revers *116 ing the Ninth Circuit Court of Appeals, the United States Supreme Court held that the substances found during that “search and seizure” were admissible as evidence even though a search warrant was not obtained. The court stated that the circumstances “justified the police in subjecting him to the very limited search necessary to preserve the highest evanescent evidence they found under his fingernails.” (Emphasis added.) 412 U.S. at 296, 96 S.Ct. at 2004.
Justice Marshall, in a concurring opinion, clarified the application of the decision. “The scope of search must be strictly limited in terms of the circumstances that justify the search.” 412 U.S. at 299, 93 S.Ct. at 2005.
In the recent case of State v. Lamere (Mont. 1987), [226 Mont. 323,] 735 P.2d 511, 44 St.Rep. 690, this Court addressed the permissible scope of search of a defendant or his belongings prior to incarceration. In Lamere, this Court adopted the rule from the very recent United States Supreme Court decision, Colorado v. Bertine, (1987) _ U.S. _, 107b S.Ct. 738, 93 L.Ed.2d 739. Bertine held that inventory searches were admissible when: 1) police are following standardized procedures; 2) police are not acting in bad faith or for the sole purpose of investigation; and 3) by securing the property, police are protecting it from unauthorized interference and to protect against claims of vandalism, theft or negligence. 44 St.Rep. at 693.
In the present case, the record is void of any reason why a search warrant could not be obtained before defendant’s wallet was searched with an ultraviolet light for traces of detection powder. Once the wallet was in the jailer’s custody there was no danger of the detection powder being lost, destroyed or disappearing. The powder certainly was not endangering anyone by its invisible presence in defendant’s wallet. Nor was the powder an illicit drug or contraband. Searching with an ultraviolet light is not a usual, standardized procedure. It is evident that agent McKay was searching defendant’s wallet with an ultraviolet light solely for the purpose of investigation. A search warrant should have been required. I believe that the failure to obtain a search warrant renders the admission of evidence of fluorescent powder found inside the wallet reversible error.
MR. JUSTICE SHEEHY joins in the foregoing dissent of MR. JUSTICE HUNT.