No. 84-079

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA, CITY OF BOZEMAN,

        Plaintiff and Appellant,

  -vs-

TIMOTHY B. ARMFIELD,

        Defendant and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mary L. Crumbaker-Smith argued, Bozeman, Montana

    For Respondent:

        H. Charles Stahmer argued, Bozeman, Montana

        Submitted: October 9, 1984

          Decided: December 28, 1984

Filed: DEC 28 1984

*Ethel M. Harrison*

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The City of Bozeman and State of Montana appeal from an order of the Gallatin County District Court granting suppression of the results of a breathalizer test. We reverse.

Timothy Armfield was arrested on a charge of driving while under the influence of alcohol. He was taken to the Gallatin County Detention Center and informed of the Montana consent law and of his right to refuse to submit to a blood alcohol test. He was informed, at the same time, that he did not have a right to consult an attorney before deciding whether to submit to the chemical testing. Armfield agreed to take the test.

Defendant Armfield initially filed a motion to suppress the results of the breath test in Bozeman City Court. The motion was denied and Armfield pleaded guilty. On appeal to District Court, defendant again moved to suppress the test results, asserting that he had a constitutional right to consult with an attorney before deciding whether to submit to a breathalizer test. His motion was granted, and the results of the test ordered suppressed.

The City and State challenge the District Court's finding of a limited constitutional right to counsel. Appellants' claims are correct. Neither the United States nor Montana constitutions guarantee a defendant the opportunity to seek an attorney's advice before deciding whether to submit or not to submit to a blood alcohol test.

Montana has enacted the following consent law:

> "(1) Any person who operates a motor vehicle upon ways of this state open to the public shall be deemed to have given consent . . . to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of

2

his blood if arrested by a peace officer for driving or in actual physical control of a motor vehicle while under the influence of alcohol. The test shall be administered at the direction of a peace officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon ways of this state open to the public while under the influence of alcohol. . . .

". . .

(3) If a resident driver under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the arresting officer . . . none shall be given, but the officer shall, on behalf of the division, immediately seize his driver's license. The peace officer shall forward the license to the division, along with a sworn report that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon ways of this state open to the public, while under the influence of alcohol and that the person had refused to submit to the test upon the request of the peace officer. Upon receipt of the report, the division shall suspend the license for the period provided in subsection (5).

". . .

"(5) The following suspension and revocation periods are applicable upon refusal to submit to a chemical test:

"(a) upon a first refusal, a suspension of 90 days with no provision for a restricted probationary license;

"(b) upon a second or subsequent refusal within 5 years of a previous refusal, as determined from the records of the division, a revocation of 1 year with no provision for a restricted probationary license." Section 61-8-402, MCA.

Defendant does not challenge the statute's validity or the fact that his consent to testing is deemed given as a matter of law. The sole issue on appeal is whether a driver arrested on a charge of driving while under the influence of alcohol has a right to seek legal advice before deciding

3

whether to submit or refuse to submit to a blood alcohol test.

The District Court held that the Sixth and Fourteenth Amendments afford defendant a reasonable opportunity to consult counsel prior to submitting to a breathalizer test. A "reasonable opportunity" is defined as the twenty or thirty minutes required to warm up the breathalizer.

There is no constitutional support for a finding of a limited right to seek the advice of counsel. The Sixth and Fourteenth Amendments do not guarantee defendant's counseled consent to testing where consent is deemed given as a matter of law. Standish v. Dept. of Revenue, M.V.D. (Kan. 1984), 684 P.2d 1276, 1281 (holding, under a consent statute similar to Montana's, that when "state law deems that all drivers have given consent to chemical tests of blood or breath when arrested for driving while under the influence, . . . no constitutional right to consult counsel in order to determine whether to submit to the test attaches").

I

The Sixth Amendment guarantees defendant the right to the assistance of counsel in all prosecutions. U. S. Const., Amend. VI; Art. II, Sec. 24, 1972 Mont. Const. The right attaches when the investigation focuses on the defendant (Escobedo v. Illinois (1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977) and continues through the final appeal of right. Douglas v. California (1963), 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Ross v. Moffitt (1974), 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341.

The right to counsel is ultimately intended as a protection of a defendant at trial. United States v. Ash

4

(1973), 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (denying a right to the presence of counsel at photographic displays). The guarantee of assistance of counsel at trial does not carry with it a generalized right to legal representation or consultation.

Armfield is, of course, entitled to the assistance of counsel at trial. Argersinger v. Hamlin (1972), 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530. As a part of his right to a fair trial, he is also entitled to (1) the pretrial presence of counsel where the incident or encounter is a "critical stage" in the prosecutorial proceedings, United States v. Wade (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (requiring counsel's presence where pretrial procedures threaten prejudice which may not be capable of reconstruction at trial), and (2) the assistance of counsel at any stage in the pretrial proceedings where the advice of counsel is essential to the protection of his Fifth Amendment privilege against self-incrimination. Escobedo, 378 U.S. at 385-387; Massiah v. United States (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246.

Armfield does not claim that he was entitled to the presence of counsel or that chemical testing is a critical stage of the prosecution. Systematized or scientific analysis of defendant's fingerprints, clothes, blood, hair, or breath does not present the problems inherent in Wade's pretrial lineup; a breathalizer test is not susceptible of the suggestive manipulation characteristic of the "critical stage" event.

> "Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of

5

> the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." Wade, 388 U.S. at 227-228.

The presence of counsel was not required at Armfield's breathalizer test to ensure a meaningful confrontation and the effective assistance of counsel at trial.

The Massiah, Escobedo and Miranda decisions link the Fifth Amendment privilege to the Sixth Amendment's right to counsel. Escobedo and Miranda sought to preserve the privilege against self-incrimination through protection of defendant from the coercive aspects of custodial interrogation. Escobedo, 378 U.S. at 478; Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Massiah sought similar protections where uncounseled and undisclosed post-indictment noncustodial interrogation elicited incriminating statements. Massiah, 377 U.S. at 201. All three decisions characterize the right to assistance of counsel as a necessary means of preserving defendant's privilege against self-incrimination—his absolute right to refuse to testify or communicate.

The results of a breath test are not self-incriminating communications. South Dakota v. Neville (1983), 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (including defendant's communicated refusal to submit to testing within the area of unprotected physical evidence). State v. Jackson (Mont. 1983), 672 P.2d 255, 40 St.Rep. 1698 (relying on Neville to hold that the admission of evidence of defendant's refusal to

6

submit to a breathalizer test did not offend his privilege against self-incrimination). The Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." Wade, 388 U.S. at 223; see also Gilbert v. California (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (finding handwriting to be among the unprotected physical characteristics, like the voice or body itself, and the taking of the exemplar not to be a "critical stage" of the criminal proceeding). Defendant's blood alcohol level, like his voice or body, is unprotected "physical or real" evidence, not Fifth Amendment communications. Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (holding that a state can force a defendant to submit to a blood alcohol test since the Fifth Amendment protects only communicative or testimonial evidence).

Defendant enjoys a right to consult counsel only where the assistance of counsel is required to protect other rights guaranteed him by law. The breathalizer test threatened no invasion of a protected right. Armfield was deemed, as a matter of law, to have consented to testing. Neither consent nor refusal is constitutionally protected, and no right to consult counsel attaches to a choice between the two.

II

The trial court based its finding of a right to counsel on the Fourteenth as well as the Sixth Amendment. The Fourteenth Amendment provides two separate sources for a finding of right to counsel: (1) the Amendment makes the Sixth

7

Amendment right to counsel applicable to the states; and (2) the Amendment, in and of itself, guarantees certain procedural rights held to be "of the very essence of a scheme of ordered liberty." Palko v. Connecticut (1937), 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288.

The Sixth Amendment makes no provision for a limited right to consult counsel before deciding to refuse or submit to a breathalizer test. The right, if it exists, exists within the "vague contours" of the Fourteenth Amendment itself. Rochin v. California (1952), 342 U.S. 165, 170, 72 S.Ct. 205, 96 L.Ed. 183. The due process clause imposes upon the states "the general requirement that States in their prosecutions respect certain decencies of civilized conduct. Due process of law, as a historic and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend 'a sense of justice'." Rochin, 342 U.S. at 173.

Rochin, like Schmerber and Neville, involved only unprotected physical evidence. Unlike Schmerber and Neville, the case also involved police "methods too close to the rack and the screw to permit of constitutional differentiation." Rochin, 342 U.S. at 172. Sheriff's deputies illegally entered the defendant's home, forced the door to his bedroom and, when the defendant attempted to swallow two morphine capsules, jumped him and struggled to open his mouth and extract the evidence. Failing at their initial seizure attempt, the deputies handcuffed the defendant, took him to a hospital and had his stomach pumped until induced vomiting produced the capsules. The Court implicitly acknowledged and

8

avoided the Fifth Amendment limitations and condemned the conduct as violative of the decency demands of due process.

Armfield was arrested, informed of his rights and the Montana consent statute's requirements. He was denied the opportunity to seek the advice of counsel. The test was conducted in compliance with statutory provisions. See § 61-8-405, MCA. We hold that the requirements of due process were met. U. S. Const., Amend. XIV; Art. II, Sec. 17, 1972 Mont. Const. We find the "community's sense of fair play and decency" to be embodied in the consent law itself. See Rochin, 342 U.S. at 173; Neville, 459 U.S. at 558 (lamenting the increasing slaughter on our highways and recognizing the state's compelling interest in highway safety). We do not find that the Armfield denial of an opportunity to call counsel constitutes the kind of conduct that requires the delineation of due process prohibition. Compare Rochin, 342 U.S. at 172-74 (describing legalized force so brutal as to offend our sense of human dignity).

The order of the District Court is reversed and the cause remanded to the District Court for further proceedings.

_Frank J. Haswell_
Chief Justice

9

We concur:

_____

_____

A. C. _____

_____

_____

John Conway Harrison

_____

_____

John C. Sheehy

_____
Justices


Mr. Justice Daniel J. Shea concurs and will file a specially
concurring opinion later.