No. 05-552

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 179

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

RONALD DELAO,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2004-979,
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        James M. Siegman, Public Defender, Billings, Montana

      For Respondent:

        Hon. Mike McGrath, Montana Attorney General, Jim Wheelis,
Assistant Attorney General, Helena, Montana

        Dennis Paxinos, Yellowstone County Attorney, Georgette Hogan, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  June 14, 2006

Decided:   August 8, 2006

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Ronald Delao (Delao) appeals an order entered in the Thirteenth Judicial District Court, Yellowstone County, denying his motion to suppress evidence. We affirm.

¶2 The sole issue raised by Delao on appeal is whether the District Court erred in denying his motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On October 30, 2004, Montana Highway Patrol Officer Scott Largent (Largent) conducted an investigative stop of Delao in response to a citizen complaint of a drunk driver. Neither side disputes the propriety of the stop.

¶4 Largent approached Delao's driver's side window. Delao rolled down his window and Largent introduced himself. Largent questioned Delao and asked for his license and registration. Delao could produce neither.

¶5 Largent returned to his vehicle to call in Delao's license plate number and to check for any outstanding warrants. While doing so, Delao emerged from his vehicle. Largent quickly exited his vehicle and told Delao to get back inside his car. Delao did not respond coherently and failed to comply with Largent's request. Concerned for his own safety, Largent took Delao into custody and placed him in the backseat of his cruiser.

¶6 Delao's vehicle remained unsecured with the doors unlocked and the windows rolled down. The Montana Highway Patrol has a policy to secure the vehicles of individuals taken

2

into custody.[1]  This policy helps to ensure the protection of the individual's property and helps to shield the Highway Patrol and its officers from liability.  Largent told Delao of his intention to secure Delao's vehicle.  In order to operate the vehicle's power locks and windows, Largent needed the keys from Delao's ignition.  He proceeded to Delao's vehicle to obtain the keys so as to secure Delao's vehicle in accordance with the Montana Highway Patrol's policy.

¶7    When Largent went to secure Delao's vehicle, he opened the door and leaned inside to locate the keys in the ignition.  Largent did not find them there.  As he pulled out of the vehicle, he noticed a clear glass bottle partially covered beneath the center armrest, and he immediately perceived the bottle as a bottle of liquor.  Largent then seized the bottle which turned out to be a 375 milliliter bottle of vodka.  Largent did not see the bottle of vodka from the outside of the vehicle when he first questioned Delao.

¶8    After seizing the bottle of vodka, Largent returned to his vehicle and asked Delao if the bottle belonged to him.  Delao replied that it did not.  Largent then asked Delao if he had the keys to his vehicle.  At this point, we must clarify a factual discrepancy in the arguments presented to this Court.  The State, Delao, and the District Court all misstated that Largent first asked Delao for his keys before he went to secure Delao's vehicle for the first time.  The videotape from Largent's patrol car reveals that Largent did not ask Delao for his keys before he went to secure Delao's vehicle for the first time.  However, we conclude this factual

---

1 Although no written policy was offered into evidence, Largent testified about the policy at the suppression hearing and his testimony was undisputed.

discrepancy is immaterial to our decision.

¶9    In any event, after apparently searching his shirt and pants pockets for his keys, Delao replied that he did not have his keys. Largent then returned to Delao's vehicle one more time, scanned the vehicle, but ultimately could not secure it.

¶10    The State charged Delao with Driving Under the Influence of Alcohol, a felony; Operating a Motor Vehicle Without Proof of Liability Insurance, a misdemeanor; and Driving While License Suspended or Revoked, a misdemeanor. Delao pled guilty to driving without insurance and driving without a license and not guilty to driving under the influence.

¶11    Delao filed a pretrial motion to suppress the bottle of vodka as evidence obtained by means of an illegal search and seizure. The District Court held a hearing on Delao's motion to suppress and subsequently denied the motion.

¶12    The jury found Delao guilty of Driving Under the Influence of Alcohol. Delao appeals.

## STANDARD OF REVIEW

¶13    We review a district court's denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether its application and interpretation of the law is correct. *State v. Shaw*, 2005 MT 141, ¶ 5, 327 Mont. 281, ¶ 5, 114 P.3d 198, ¶ 5.

## DISCUSSION

¶14    The District Court concluded that Largent properly seized the bottle of vodka under the "plain view" doctrine. Delao argues that Largent obtained the bottle of vodka by an illegal search of his vehicle not excepted by the plain view doctrine, and that the District

4

Court erred in not granting his motion to suppress the use of the vodka bottle as evidence at trial. We disagree with Delao's contention and agree with the District Court.

¶15 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect individuals against unreasonable searches and seizures. *Shaw*, ¶ 7; *State v. Elison,* 2000 MT 288, ¶ 39, 302 Mont. 228, ¶ 39, 14 P.3d 456, ¶ 39. Warrantless searches and seizures are *per se* unreasonable absent a few carefully drawn exceptions. *Shaw*, ¶ 7; *Elison,* ¶ 39. One such exception is the plain view doctrine. If, while a police officer is lawfully present on an individual's property, and in the course of his or her lawful presence, the officer discovers evidence in plain view, and if its incriminating nature is "immediately apparent," that evidence may be seized and used against the defendant. *State v. DeWitt*, 2004 MT 317, ¶ 25, 324 Mont. 39, ¶ 25, 101 P.3d 277, ¶ 25. *See also State v. Loh* (1996), 275 Mont. 460, 473, 914 P.2d 592, 600; *State v. Weaselboy,* 1999 MT 274, ¶ 23, 296 Mont. 503, ¶ 23, 989 P.2d 836, ¶ 23; *State v. Bassett,* 1999 MT 109, ¶ 52, 294 Mont. 327, ¶ 52, 982 P.2d 410, ¶ 52.

¶16 Relying on our opinion in *State v. Sawyer* (1977), 174 Mont. 512, 518, 571 P.2d 1131, 1134, *overruled on other grounds by State v. Long* (1985), 216 Mont. 65, 67, 700 P.2d 153, 155, the District Court, in its order denying Delao's motion to suppress, concluded that Largent had an obligation to secure Delao's property and that this obligation gave Largent a lawful reason to lean inside Delao's vehicle to look for Delao's keys in the ignition. Thus, the District Court concluded, Largent was lawfully present inside the vehicle when he discovered the bottle of vodka in plain view.

5

¶17 Delao maintains otherwise, arguing that the District Court misapplied the plain view doctrine in his case by overstating Largent's obligation to him and by thus failing to show that Largent was legally present in his vehicle at the time Largent discovered the bottle of vodka. According to Delao, because Largent was not lawfully present in his vehicle, Largent's discovery of the bottle of vodka was unlawful and the bottle should have been suppressed as evidence against him.

¶18 In *Sawyer*, we concluded that the police could protect themselves from liability for lost or stolen property by taking an inventory of the items in plain view, locking the vehicle, and returning the keys to the owner. *Sawyer,* 174 Mont. at 517, 571 P.2d at 1134; *State v. Hamilton*, 2003 MT 71, ¶ 35, 314 Mont. 507, ¶ 35, 67 P.3d 871, ¶ 35. In doing so, we recognized two justifications for an inventory search of an impounded vehicle: (1) protection of the contents of the vehicle for the owner's benefit; and (2) protection of the police from claims for lost property in their custody. *Sawyer,* 174 Mont. at 517, 571 P.2d at 1134. Additionally, we held that, as a gratuitous bailee, the police are charged with a slight duty of care which is violated only by gross negligence. *Sawyer,* 174 Mont. at 517, 571 P.2d at 1134.

¶19 *Sawyer* involved different factual circumstances than the instant case. In *Sawyer*, the officers impounded the defendant's vehicle and performed an inventory search. Here, Largent left Delao's vehicle on the side of the road temporarily and did not perform an inventory search. Nevertheless, we agree with the District Court that, although *Sawyer* presented different factual circumstances, Largent still had an obligation to secure Delao's

6

vehicle. The concerns in *Sawyer* apply not only in the case where the police have impounded a vehicle, but also apply in the situation where, as here, the police have arrested an individual and have temporarily left his vehicle on the side of the road.

¶20 Accordingly, we conclude that Largent's attempt to roll up Delao's windows and lock his doors fell within the ambit of the slight duty of care that Largent owed to Delao. In attempting to roll up Delao's windows and lock his doors, Largent made a reasonable effort to perform the duty of care set forth in *Sawyer*.

¶21 Delao argues that Largent performed an illegal inventory search on his vehicle. Again, we disagree. Unlike *Sawyer* and contrary to Delao's contention, Largent did not perform an inventory search, or, indeed, any type of "search" in the constitutional sense. The plain view doctrine simply recognizes that if an article is in plain view, neither its observation nor its seizure involves any invasion of privacy; rather, a seizure of the article involves an invasion only of the owner's possessory interest. *State v. Collard* (1997), 286 Mont. 185, 195, 951 P.2d 56, 62-63; *Loh,* 275 Mont. at 468, 914 P.2d at 597 (citing *Horton v. California* (1990), 496 U.S. 128, 133-34, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112). Thus, the seizure of an object in plain view does not constitute a search. *State v. Carlson* (1982), 198 Mont. 113, 118-19, 644 P.2d 498, 501. *See also State v. Roper*, 2001 MT 96, ¶ 17, 305 Mont. 212, ¶ 17, 26 P.3d 741, ¶ 17 (holding that officers had a right to seize a black pouch once they were legally present in Roper's workplace after receiving information that Roper kept drugs in a black pouch); *State v. Romero* (1986), 224 Mont. 431, 437, 730 P.2d 1157, 1161 (holding that seizure of marijuana constituted a reasonably delayed plain view seizure

rather than a search incident to arrest).

¶22 Here, Largent alerted Delao of his intention to go and secure the vehicle. Largent then proceeded to the vehicle and opened the door to look for the keys in the ignition. At this point, Largent concerned himself solely with locating the keys and not with taking an inventory of the vehicle's contents. During his attempt to locate the keys, Largent testified that the bottle of vodka was in plain view underneath the center armrest, and that he then seized the bottle.[2]

¶23 Delao analogizes his case to *Elison* where we held the defendant had an expectation of privacy in items stored behind the front seat of his vehicle. However, *Elison* presented facts distinguishable from the present case. In that case, an officer pulled Elison over after a citizen riding along with the officer noticed Elison smoking out of a pipe which the citizen suspected to be a marijuana pipe. The officer asked Elison to exit the vehicle and asked him whether he had marijuana in the vehicle. Elison replied that he had marijuana tucked behind the front seat. The officer then entered the vehicle without a warrant and searched behind the front seat and found marijuana. We held that the State did not demonstrate articulable facts showing a necessity to search Elison's vehicle without a warrant, and that the officer's search of Elison's vehicle was unconstitutional under Article II, Sections 10 and 11 of the Montana

---

2 Officer Largent did testify that he performed a quick "scan" of the vehicle for items left in the vehicle. This scan did constitute an inventory search; however, the scan took place after the discovery of the bottle of vodka, bore no additional evidence and thus has no bearing on the issue of Delao's motion to suppress evidence. Additionally, even if Largent scanned the vehicle before finding the bottle, the quick search for valuable items in plain view would not have constituted an illegal search since Largent was lawfully present in Delao's vehicle and had a lawful reason to perform an inventory search.

Constitution.

¶24    Here, Delao did not place the bottle of vodka out of plain view, nor did Largent perform a search of the vehicle while specifically looking for the bottle of vodka as the officer in *Elison* specifically searched for the marijuana.

¶25    Delao further argues that Largent had to immediately perceive the bottle in plain view when Largent first questioned him and stood outside his vehicle. Delao relies on language from *Sawyer* for this proposition. In *Sawyer*, we stated:

> We hold only that where the sole justification for an inventory search is the fact it is incident to the lawful custody of an impounded vehicle and pursuant to standard police procedure, such search must be limited in scope to articles in plain view from outside the vehicle.

¶26    First, as we previously noted, *Sawyer* involved different factual circumstances distinguishable from the present case. Unlike *Sawyer*, Largent neither impounded Delao's vehicle, nor did he perform an inventory search.

¶27    Second, in arguing that Largent needed to first perceive the bottle of vodka when he first stood outside the vehicle, Delao misconstrues our holding in *Sawyer* and the plain view doctrine. Delao overlooks the fact that, under the plain view doctrine, the lawful presence of the officer, in or on the property where the evidence is located, serves as the prerequisite to any seizure of the evidence. Accordingly, when Largent first stood outside Delao's vehicle, he had no lawfully sufficient reason to enter Delao's vehicle. However, once Largent placed Delao into custody, Largent had a legally sufficient reason to enter Delao's vehicle to obtain the keys from the ignition so that he could secure the vehicle. Having met the prerequisite of

being lawfully in Delao's vehicle, the only issue was whether Largent could see the bottle of vodka in plain view from his vantage point inside the vehicle. Thus, whether Largent could see the bottle from outside the vehicle, before he had a lawfully sufficient reason to enter the vehicle, is irrelevant.

¶28 Similarly, in *Loh*, officers had a legally sufficient reason to enter Loh's burning home upon information that some of the occupants had not yet escaped. The question in that case was not whether the officer's could see Loh's marijuana plants from outside the house, but rather, whether the marijuana plants appeared in plain view once the officers were legally inside the house. *See Loh*, 275 Mont. at 473, 914 P.2d at 601.

¶29 Largent testified that he leaned into the vehicle to look for the keys in the ignition, and on his way out, he saw a clear bottle partially covered beneath the center armrest. Delao does not dispute this characterization of the location of the bottle. We conclude, as did the trial court, that the bottle of vodka was in plain view once Largent leaned inside the vehicle to search for the keys.

¶30 Largent testified that he immediately perceived the bottle beneath the armrest as one containing liquor. The District Court described the bottle as a "pint flask-shaped bottle." Undoubtedly, in his training and experience as a highway patrolman, Largent knew that alcohol, unlike any other popular beverage, often comes in flask-shaped bottles. Again, as did the District Court, we defer to the common sense judgment of law enforcement officials in matters such as this. The incriminating nature of the bottle of vodka was immediately

10

apparent.

## CONCLUSION

¶31     In summary, we hold that Largent was lawfully present inside Delao's vehicle, that the bottle of vodka was in plain view, and that the incriminating nature of the bottle of vodka was immediately apparent.  Therefore, the District Court did not err in denying Delao's motion to suppress.

¶32     Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JOHN WARNER