DA 12-0239

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 115

STATE OF MONTANA,

      Plaintiff and Appellant,

  v.

KRISTIN ELIZABETH KELM,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and For the County of Sheridan, Cause No. DC 46-2011-9
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Timothy C. Fox, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

            Steven Howard, Sheridan County Attorney; Plentywood, Montana
Nickolas C. Nurnion, Special Deputy Sheridan County Attorney;
Glasgow, Montana

      For Appellee:

            Brad W. Fjeldheim; O'Toole Law Firm; Plentywood, Montana

Submitted on Briefs:  January 23, 2013

Decided:   April 30, 2013

Filed:

_____
                   Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The State of Montana appeals an order of the Montana Fifteenth Judicial District Court, Sheridan County, granting defendant Kristin Kelm's motion to suppress evidence. We affirm in part, reverse in part, and remand the action for further proceedings.

¶2 We address the following issues on appeal:

¶3 *1. Did the District Court incorrectly conclude that, because the arresting officer did not follow § 46-6-312, MCA, all evidence gathered after Kelm's arrest should be suppressed?*

¶4 *2. Did the District Court incorrectly conclude that the officer's failure to advise Kelm of her* Miranda *rights at the time of her arrest required suppression of all evidence obtained after her arrest?*

¶5 *3. Did the District Court incorrectly conclude that evidence seized from Kelm's vehicle must be suppressed?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶6 In the early-morning hours of February 19, 2011, Sheridan County Sheriff's Deputy Robert Krause (Krause) observed a blue pickup truck driven by Kristen Kelm cross the center line of a Plentywood, Montana street and drive onto the local highway. Krause followed Kelm for several miles and "observed [her] vehicle weaving within its lane touching both the fog line and the center line and then actually crossing the center line two or three times."

2

¶7     Krause initiated a traffic stop on Kelm's vehicle and she pulled over to the side of the road. When Krause approached the driver's-side window, Kelm immediately provided her driver's license. Krause informed Kelm that he had stopped her for crossing the center line of the highway. He then remarked to Kelm that her eyes looked "bloodshot and glassy" and asked if she had been drinking. Kelm denied that she had consumed alcohol that evening.

¶8     Without having Kelm get out of the car, Krause proceeded to administer a horizontal gaze nystagmus test (HGN) to help determine whether Kelm was intoxicated. He observed a "lack of smooth pursuit in both eyes as well as distinct and sustained nystagmus at maximum deviation in both eyes" and gave her a score of four out of a possible six points, which indicated intoxication. Krause again asked Kelm if she had been drinking alcohol, and she admitted to consuming one drink.

¶9     After Krause had finished administering the HGN test, he determined that Kelm needed to pass standardized field sobriety tests before she could resume driving. Because the temperature was minus-one degree Fahrenheit and ice and snow covered the highway, Krause asked Kelm if she would agree to perform sobriety tests at the Sheridan County Jail, where the climate-controlled conditions would give her the best chance of passing the tests. Kelm agreed, turned off her truck, and gave her keys to Krause. In accordance with department policy, Krause put Kelm in handcuffs before placing her in the backseat of his patrol vehicle. Krause did not inform Kelm that she was under arrest.

3

¶10     As Krause was helping Kelm buckle her seatbelt, he smelled alcohol on Kelm's breath. Krause asked Kelm to confirm that she had only had one drink that evening. He then informed her that he could smell alcohol, and asked if she was certain that she had only had one drink; Kelm said yes.

¶11     Krause then noticed that Kelm had not turned off her truck's lights. Kelm gave him permission to turn off the lights before they drove away so that the truck's battery would not die. Krause unlocked the pickup, reached in from the driver's side, and turned off the lights. As he was walking back to his patrol car, he noticed that the truck's dome lights still were illuminated. He opened the driver's-side door a second time and immediately noticed a half-full beer bottle on the floor as well as a plastic cup filled with a green liquid that smelled like alcohol in the passenger cup holder. After emptying the beer bottle and plastic cup in front of his cruiser, Krause asked Kelm about the green liquid. Kelm could not identify the liquid and denied that she had been drinking it.

¶12     Krause drove Kelm to the booking room at the Sheridan County Jail, where she performed three field sobriety tests under the direction of Sheriff Deputy Darren Ginn (Ginn): a second HGN test, a "walk and turn" test, and a "one-leg stand" test. Kelm failed each test. Like Krause, Ginn observed a "lack of smooth pursuit" and "distinct nystagmus at maximum deviation" during the HGN test. During the walk and turn test, Kelm failed to follow directions by walking too soon, raising her arms while walking, and making an improper turn. She also was unable to walk in a straight line in a heel-toe fashion. During the one-leg stand, she swayed back and forth, raised her arms, and put

4

her foot down too soon. Ginn and Krause did not ask Kelm any potentially incriminating questions while administering the sobriety tests.

¶13 Following the sobriety tests, Ginn read to Kelm an implied consent advisory form. Ginn informed Kelm that she was under arrest for driving a motor vehicle while under the influence of alcohol and that, under Montana law, she was deemed to have given her implied consent to either a blood or breath test for alcohol. This was the first time a law enforcement officer told Kelm that she was under arrest. Ginn also explained that Kelm's *Miranda* right to an attorney did not apply during the testing procedure and advised her of the consequences if she refused to take the test. Kelm signed the form and agreed to take a breath test. The test showed that her blood alcohol content was 0.198—over twice the legal limit. Krause then read Kelm her *Miranda* rights for the first time. Kelm signed a form indicating that she understood her rights and stated she did not wish to further speak with law enforcement. Krause then formally booked Kelm into the Sheridan County Jail.

¶14 Later that day, Kelm appeared before the Sheridan County Justice Court and was charged with three separate counts: (1) unlawful possession of an open alcoholic beverage container in a motor vehicle, in violation of § 61-8-460, MCA; (2) failure to drive on the right side of a roadway, in violation of § 61-8-321, MCA; and (3) driving under the influence of alcohol, first offense, in violation of § 61-8-401, MCA. After the Justice Court denied Kelm's motion to suppress all evidence collected after her arrest,

5

Kelm pleaded guilty to all three charges, but gave notice of her intention to appeal the denial of her motion to the District Court pursuant to § 46-12-204(3), MCA.

¶15 On October 17, 2011, Kelm filed motions requesting the District Court to order the evidence against her suppressed. Kelm asserted that the State should not be allowed to introduce evidence obtained during the HGN test Krause administered, evidence of the half-full beer bottle and plastic cup that Krause took from Kelm's car as he was trying to turn off her lights, and "all evidence gathered prior to [her] *Miranda* warning."

¶16 The District Court held a hearing on the matter, and entered an order on March 28, 2012. The court denied Kelm's motion regarding the HGN test and concluded that the State could introduce evidence of Krause's HGN test after laying a proper foundation.[1] The District Court disagreed with the State's contention that Krause's seizure of the beer bottle and plastic cup fell within the plain view doctrine because Krause was not "lawfully present" in Kelm's vehicle; consequently, the court granted Kelm's motion to suppress that evidence. The court also granted Kelm's motion to suppress "all evidence the State gathered between her arrest and [when the] *Miranda* warnings finally [were] articulated" at the Sheridan County Jail. The District Court agreed with Kelm's argument that, because Deputy Krause did not satisfy § 46-6-312, MCA, and did not apprise Kelm of her *Miranda* rights immediately after arresting her, her arrest was unlawful and all evidence subsequently obtained must be suppressed. The State appeals.

---

[1] Kelm has not cross-appealed this finding and it is not at issue on appeal.

## STANDARD OF REVIEW

¶17  The State may appeal from any court order or judgment in a criminal case "the substantive effect of which results in . . . suppressing evidence."  Section 46-20-103(2)(e), MCA.  When reviewing a district court's ruling on a motion to suppress, we determine "whether the findings of fact are clearly erroneous and whether the court correctly interpreted the law and applied it to those facts."  *State v. Nixon*, 2013 MT 81, ¶ 15, 369 Mont. 359, ___ P.3d ___ (quoting *State v. Haldane*, 2013 MT 32, ¶ 15, 368 Mont. 396, ____ P.3d ___).  A factual finding is clearly erroneous if it is "not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if this Court's review of the record leaves us with a definite or firm conviction that a mistake has been made."  *Nixon*, ¶ 15 (quoting *State v. Morrisey*, 2009 MT 201, ¶ 14, 351 Mont. 144, 214 P.3d 708).

¶18  Our review of constitutional questions is plenary, *State v. Dugan*, 2013 MT 38, ¶ 14, 369 Mont. 39, ___ P.3d ___, and we "review for correctness a district court's interpretation of constitutional law."  *Nichols v. Dept. of Just.*, 2011 MT 33, ¶ 8, 359 Mont. 251, 248 P.3d 813.  Likewise, to the extent a district court's ruling is based on interpretation of a statute, our review is *de novo*.  *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811.

## DISCUSSION

¶19    *1. Did the District Court incorrectly conclude that, because the arresting officer did not follow § 46-6-312, MCA, all evidence gathered after Kelm's arrest should be suppressed?*

¶20    The District Court concluded that even though Krause had probable cause to arrest Kelm, he failed to satisfy the requirements of § 46-6-312, MCA, when arresting her. That statute provides:

> A peace officer making an arrest without a warrant shall inform the person to be arrested of the officer's authority, of the intention to arrest that person, and of the cause of the arrest, except when the person to be arrested is actually engaged in the commission of or in an attempt to commit an offense or is pursued immediately after its commission, after an escape, or when the giving of the information will imperil the arrest.

Section 46-6-312, MCA.  Because Krause did not satisfy those requirements, the District Court concluded that his arrest of Kelm was unlawful and, consequently, the court suppressed "all evidence the State gathered after Deputy Krause arrested [Kelm]."

¶21    For purposes of our analysis of this case, we begin with the State's concession that "at the moment Kelm was placed in handcuffs in the back of the patrol car, she was 'for all intents and purposes . . . arrested.'"[2]  The State argues that Kelm's arrest was lawful because Krause had probable cause to arrest her and that Krause satisfied the requirements of § 46-6-312, MCA, because "the circumstances of the stop and arrest

---

[2] The State suggests on appeal that "[i]t was arguable on the facts presented that Kelm was not 'under arrest' during the short trip to the station to complete field sobriety tests, but only reasonably and temporarily detained for appropriate investigative purposes made necessary under the circumstances."  It agrees, however, that it is bound by its concession before the District Court.  We therefore assume without deciding that Kelm was under arrest.

8

evident in the record are more than sufficient to establish that Kelm was informed of the necessary statutory requirements[.]"

¶22 When interpreting a statute, "we look first to the plain meaning of the words it contains." *Kluver v. PPL Mont., LLC*, 2012 MT 321, ¶ 55, 368 Mont. 101, 293 P.3d 817. When the language of a statute "is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation." *Kluver*, ¶ 55. The language of § 46-6-312, MCA, makes plain that, unless certain exceptions apply, a law enforcement officer making a warrantless arrest "shall inform" the person being arrested of: (1) the officer's authority to arrest her; (2) the officer's intention to arrest her; and (3) the reason why she is being arrested.

¶23 During the suppression hearing, Krause agreed that "at no point in time did [he] tell Ms. Kelm out at the scene of the stop that she was under arrest." We are unconvinced by the State's argument that, based on the facts and circumstances of the traffic stop, Kelm "was informed" that she was under arrest.

¶24 Whether or not Krause met the technical requirements of the statute, however, the District Court erred in concluding that his failure rendered Kelm's arrest unlawful. The court determined that an officer's failure to inform the arrestee of the arrest "is a structural defect to the arrest itself rendering it unlawful." We have held, however, that the exclusionary rule will not apply to violations of statutory requirements unless the violation affects the accused's substantial rights. *State v. West*, 1998 MT 282, ¶¶ 8-9, 291 Mont. 435, 968 P.2d 289 (citing *State v. Pipkin*, 1998 MT 143, ¶ 27, 289 Mont. 240,

9

961 P.2d 733); *see also* § 46-5-103(1)(b), (c), MCA. The purpose of statutes like § 46-6-312, MCA, is to ensure that an officer communicates adequately his authority and actions when there is no written warrant authorizing the arrest. *State v. Bradshaw*, 53 Mont. 96, 99, 161 P. 710, 711 (1916) (holding that the officer must "make known his official character, *or it must be known to the offender*; else there is no obligation upon the latter to submit") (emphasis added). Kelm does not allege that she lacked actual knowledge of Krause's authority to arrest her, his intention to arrest her, or the reasons why he was taking her into custody. Consequently, we conclude that Krause's failure to use the words, "you are under arrest," when he placed her in the patrol car, did not impair Kelm's substantial rights.

¶25 The lawfulness of a warrantless arrest turns on the existence of probable cause. An officer "must have probable cause to justify a warrantless arrest." *State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, 965 P.2d 231 (citing § 46-6-311(1), MCA). Thus, probable cause is the "standard set by the Constitution" by which the reasonableness of a seizure is measured to determine whether the arrestee's constitutional rights have been protected. *Henry v. U.S.*, 361 U.S. 98, 102, 80 S. Ct. 168, 171 (1959); *see also Carroll v. U.S.*, 267 U.S. 132, 161, 45 S. Ct. 280, 288 (1925). Probable cause exists "where the facts and circumstances within an officer's personal knowledge prove sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense." *State v. Ellington*, 2006 MT 219, ¶ 16, 333 Mont. 411, 143 P.3d 119 (citing *Williamson*, ¶ 12). If supported by facts demonstrating probable cause, a

10

warrantless arrest will be held lawful. *Virginia v. Moore*, 553 U.S. 164, 171, 128 S. Ct. 1598, 1604 (2008). Krause lawfully arrested Kelm because he had probable cause to believe that Kelm was driving under the influence of alcohol. He observed Kelm driving her truck erratically across the center and fog lines of the highway, her eyes were "bloodshot and glassy," and the HGN test he administered indicated Kelm was intoxicated. Kelm did not dispute that these facts were sufficient to establish probable cause for her arrest.

¶26 With no indication that Kelm's substantial rights were impaired, probable cause for the arrest protects her constitutional right to be free from unreasonable seizures, despite any noncompliance with the arrest statute. Applying that standard, Krause's arrest of Kelm was lawful. Because the arrest was lawful, Krause's failure to satisfy all of the requirements prescribed in § 46-6-312, MCA, did not require the suppression of evidence obtained after the arrest. The District Court erred in concluding otherwise.

¶27 *2. Did the District Court incorrectly conclude that the officer's failure to advise Kelm of her* Miranda *rights at the time of her arrest required suppression of all evidence obtained after her arrest?*

¶28 The District Court concluded that "[a]t the point of arrest, [Kelm] was entitled to a *Miranda* warning." Because Krause did not read Kelm her *Miranda* rights immediately after arresting her, the court concluded that Kelm's arrest was unlawful and it suppressed all evidence collected by the State after the arrest. The State concedes that the answers to two questions posed by Krause to Kelm while Kelm was in the patrol car should be

11

suppressed. Nevertheless, the State contends that the court "erred when it suppressed evidence obtained from Kelm that was not derived from custodial interrogation." Kelm was not entitled to a *Miranda* warning prior to the second HGN test, the field sobriety tests that she completed at the jail, or the Intoxilyzer breath test, according to the State, because the results of those tests were not self-incriminating statements that must be suppressed in the absence of a *Miranda* waiver. We agree with the State that Kelm's responses to Krause's two questions comprise the only evidence that must be suppressed.

¶29 The Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution both provide that no person shall be compelled, in any criminal case, to be a witness against himself. *State v. Larson*, 2010 MT 236, ¶ 28, 358 Mont. 156, 243 P.3d 1130 (citing *State v. Olson*, 2003 MT 61, ¶ 13, 314 Mont. 402, 66 P.3d 297). When an individual "is taken into custody or otherwise deprived of his freedom by the authorities in any significant way *and is subjected to questioning*," he "'must be adequately and effectively apprised of his [*Miranda*] rights and the exercise of those rights must be fully honored.'" *Morrisey*, ¶ 28 (quoting *Miranda v. Arizona*, 384 U.S. 436, 467, 478, 86 S. Ct. 1602, 1624, 1630 (1966)) (emphasis added); *see also* § 46-6-107, MCA. Failure by law enforcement officers to provide a *Miranda* warning and obtain a waiver of rights prior to a custodial interrogation "generally requires exclusion *of any statements obtained.*" *Morrisey*, ¶ 28 (emphasis added).

¶30 Although the constitutional protections under *Miranda* are afforded during a custodial interrogation, those protections generally do not attach during field sobriety

12

tests or breath tests because "the privilege against self-incrimination does not extend to real or objective evidence." *State v. Van Kirk*, 2001 MT 184, ¶ 22, 306 Mont. 215, 32 P.3d 735; *see also Schmerber v. Cal.*, 384 U.S. 757, 764, 86 S. Ct. 1826, 1832 (1966). The Fifth Amendment "offers no protection against compulsion . . . to assume a stance, to walk, or to make a particular gesture." *State v. Armfield*, 214 Mont. 229, 235, 693 P.2d 1226, 1229-30 (1984) (*overruled on other grounds, State v. Reavley*, 2003 MT 298, ¶ 41, 318 Mont. 150, 79 P.3d 270). Consequently, a "mere request that the suspect perform a series of sobriety tests, done without any interrogation of the suspect, does not constitute a custodial interrogation" and does not require law enforcement officers to read a suspect his or her *Miranda* rights prior to administering those tests. *Van Kirk*, ¶ 22; *see also State v. Thompson*, 237 Mont. 384, 386-88, 773 P.2d 722, 723-24 (1989). Similarly, the Fifth Amendment offers no protection against compulsion to submit to a breath test because "[t]he results of a breath test are not self-incriminating communications," but instead are "unprotected 'physical or real' evidence." *Armfield*, 214 Mont. at 235, 693 P.2d at 1229-30; *see also State v. Michaud*, 2008 MT 88, ¶ 61, 342 Mont. 244, 180 P.3d 636. Because a compulsory breath test is not a custodial interrogation, a law enforcement officer is not required to read a suspect his or her *Miranda* rights prior to administering the test. *Missoula v. Forest*, 236 Mont. 129, 133-34, 769 P.2d 699, 701-02 (1989).

¶31 The District Court erred in concluding that Krause's failure to give Kelm a *Miranda* warning immediately following her arrest required suppression of all evidence subsequently obtained. A *Miranda* warning is required only prior to a custodial

13

interrogation. The State concedes that the District Court properly suppressed the two self-incriminating statements Kelm made in response to Krause's questions after he placed her in the patrol vehicle. The results of the second HGN test, the field sobriety tests, the Intoxilyzer test and other non-testimonial evidence gathered at the jail should not have been suppressed, however, because those results are real or objective evidence not protected by the right against self-incrimination. Accordingly, we reverse the District Court's suppression of that evidence.

¶32    *3. Did the District Court incorrectly conclude that evidence seized from Kelm's vehicle must be suppressed?*

¶33    The State argued that Krause lawfully seized the beer bottle and plastic cup containing alcohol from Kelm's truck without a warrant under the plain view doctrine, which "permits the seizure of evidence that otherwise could not be seized without a warrant[.]" *State v. Lewis*, 2007 MT 295, ¶ 24, 340 Mont. 10, 171 P.3d 731. The District Court rejected the State's argument that the seizure fell within the plain view doctrine because it concluded that Krause was not "lawfully present" in Kelm's truck when he seized the evidence.

¶34    We use three criteria for determining whether a police officer's seizure of evidence was valid under the plain view doctrine: (1) "the officer must be lawfully at the place from which he could plainly view the evidence"; (2) "the item must be in plain view and its incriminating character be immediately apparent"; and (3) the officer "must also have a lawful right of access to the object itself." *State v. Doyle*, 1998 MT 195, ¶ 11,

14

290 Mont. 287, 963 P.2d 1255. We addressed an issue similar to that raised by Kelm in *State v. Delao*, 2006 MT 179, 333 Mont. 68, 140 P.3d 1065. A highway patrol officer arrested Delao and placed him in the backseat of his cruiser while Delao's vehicle, which was parked on the side of the road, remained unsecured with the doors unlocked and the windows opened. *Delao*, ¶¶ 5-6. As the officer attempted to secure the vehicle, he seized a bottle of vodka in plain view in the vehicle. *Delao*, ¶¶ 7-8. We concluded that the officer "had an obligation to secure Delao's vehicle" so as to prevent damage to or theft of the vehicle because doing so "fell within the ambit of the slight duty of care that [the officer] owed to Delao" as a gratuitous bailee. *Delao*, ¶¶ 18-20 (citing *State v. Sawyer*, 174 Mont. 512, 517-18, 571 P.2d 1131, 1134 (1977)). For that reason, we concluded that the officer "was lawfully present inside Delao's vehicle" when he seized the bottle of vodka. *Delao*, ¶ 31.

¶35 Kelm argues that the District Court properly distinguished *Delao* because the windows of Kelm's truck were rolled up and the doors were locked. The court determined that "[t]here was no better chance that the contents of [Kelm's] vehicle itself would be damaged or taken if Deputy Krause left the lights on than if he did not." Although Kelm also contends that Krause exceeded his duty under *Delao* because he stood "at the open door of Ms. Kelm's pickup for more than a minute talking on the phone" prior to seizing the evidence, she did not raise this argument before the District Court and we refuse to consider it for the first time on appeal. *State v. Ferguson*, 2005 MT 343, ¶ 38, 330 Mont. 103, 126 P.3d 463.

¶36 Consistent with precedent, we conclude that Krause's decision to turn off the lights in Kelm's truck prior to driving her to the jail fell within the slight duty of care that he owed Kelm as her gratuitous bailee. *Delao*, ¶¶ 18-20 (citing *Sawyer*, 174 Mont. at 517-18, 571 P.2d at 1134). Kelm's truck was parked on the side of an icy highway in sub-zero temperatures. It was reasonable for Krause to believe that, if he did not turn off the truck's lights, the truck's battery would go dead while Kelm was performing her sobriety tests. If she passed those tests, Krause would then have to return Kelm to a vehicle parked on the side of the road in sub-zero temperatures that could not start. In such an event, Krause would be slightly responsible for Kelm's safety and the condition of her truck. Given these circumstances, Krause made a reasonable effort to perform the duty of care set forth in *Sawyer* and *Delao*. *Delao*, ¶ 20. In light of this conclusion, we need not consider Kelm's argument that her consent to have Krause turn off the headlights in her truck was not freely given.

¶37 We hold that Krause was lawfully present in Kelm's vehicle when he seized the beer bottle and plastic cup. *Delao*, ¶ 31. Krause had lawful access to the beer bottle and plastic cup. Those items were in plain view and the incriminating nature of those items immediately was apparent. Accordingly, the District Court erred in granting Kelm's motion to suppress those items. *See Delao*, ¶ 31.

## CONCLUSION

¶38 The District Court erred in suppressing all of the evidence gathered after Kelm was taken into custody, except for Kelm's answers to two questions asked by Krause

16

while Kelm was handcuffed and in the backseat of Krause's patrol car. Because we affirm the District Court's suppression of those statements, Kelm "prevails on appeal" as contemplated by § 46-12-204(3), MCA, and, pursuant to that statute, she must be allowed to withdraw the guilty plea she entered in Justice Court. Section 46-12-204(3), MCA.

¶39 Affirmed in part, reversed in part, and remanded to the Sheridan County Justice Court to provide Kelm the opportunity to withdraw her guilty plea and proceed to trial.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS