# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 24, 2010

## TERRANCE CECIL v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Maury County**
**No. 13621      Jim T. Hamilton, Judge**

---

**No. M2009-00671-CCA-R3-PC - Filed September 12, 2011**

---

Petitioner, Terrance Cecil, was found guilty by a Maury County jury of possessing twenty-six grams or more of cocaine with intent to sell, a Class B felony, and was sentenced to serve ten years in the Department of Correction as a Range I standard offender. On direct appeal, this Court affirmed the judgment. *See State v. Terrance Cecil*, No. M2004-00161-CCA-R3-CD, 2004 WL 3044896 (Tenn. Crim. App. Dec. 30, 2004) *app. denied* (Tenn. May 23, 2005). Petitioner timely filed a petition for post-conviction relief. The post-conviction court granted relief to the extent of setting aside the sentence and granting a new sentencing hearing. The State has not appealed from that order. Petitioner has appealed from the post-conviction court's denial of the relief requested by Petitioner to set aside his conviction. After a thorough review of the record, we conclude that Petitioner failed to prove that he suffered any prejudice from any alleged deficiencies by his counsel. Since the prejudice prong was not proven, we need not address the alleged deficiencies of counsel. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J. and ALAN E. GLENN, J., joined.

Larry Samuel Patterson, Jr, Columbia, Tennessee, for the appellant, Terrance Cecil.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; T. Michel Bottoms, District Attorney General, and Brent Cooper, Assistant District Attorney General or the appellee, the State of Tennessee.

**OPINION**

In this appeal, the only grounds for post-conviction relief asserted by Petitioner are that his trial counsel rendered ineffective assistance of counsel by: (1) failing to file, and present proof, regarding a motion to suppress statements he made to law enforcement officers, based on the grounds that his rights under *Miranda v. Arizona*, 384 U.S. 436 (1964) were violated; and (2) failing to file, and present proof, regarding a motion to suppress the seizure of Petitioner, as well as the seizure of cocaine from Petitioner's person and from the inside of a "teddy bear" found in the backseat of the vehicle stopped by police in which Petitioner was a passenger. Petitioner asserts the basis of the motions to suppress would be that all items were seized in violation of his rights guaranteed by the United States and Tennessee Constitutions to be protected from unlawful searches and seizures.

To place Petitioner's claims in proper perspective, before summarizing testimony at the post-conviction hearing, we set forth the facts of the case as stated by this court in the opinion on direct appeal from his conviction. Petitioner is referred to as "the defendant."

> This case relates to the defendant's arrest on July 9, 2002, with 3.8 grams of cocaine tucked behind his scrotum and 24.3 grams of cocaine inside a teddy bear on the back seat of the car in which he was riding. The defendant was sitting on the front passenger seat, Kevin Ingold was driving the car, and Cameron Alexander was sitting on the rear seat with the teddy bear when the three men were stopped by a police officer.
>
> Cameron Alexander testified that on July 9, 2002, he asked Mr. Ingold to help him get an ounce of cocaine. Mr. Alexander said he wanted merely to make some extra money and was not in the regular business of selling drugs. He said Mr. Ingold agreed to get an ounce of cocaine for him and made a telephone call. He testified that afterward, he and Mr. Ingold drove to an apartment building, picked up the defendant, and headed for the "east side" of Columbia, Tennessee. He said that during the drive he handed the defendant $1000.00 in cash to purchase the ounce of cocaine and that the defendant took the money. He said they dropped the defendant off in front of a house and then drove to a different location and parked, waiting for the defendant to call. He testified that approximately five or ten minutes later the defendant called, and they returned to the house to pick him up. He said the defendant entered the car, sat on the front passenger seat, and handed him the drugs. Mr. Alexander testified that he placed the drugs inside a teddy bear that he had brought with him for this purpose and that the three men started driving away. He said within five to ten minutes, police officers signaled

-2-

them to pull over. He said the police officers grabbed the defendant, searched him, and placed him in handcuffs. Mr. Alexander said he heard the defendant tell the officer, "The white boy had the dope in the backseat." He said the officers then removed Mr. Ingold and himself from the car. Mr. Alexander testified that he made no deals with the state regarding his testimony.

On cross-examination, Mr. Alexander admitted that the arrest terrified him and that he would do "anything in the world" to avoid going to jail, which included lying. He said that he was not lying during his testimony, however. He admitted that he spoke with the district attorney and reiterated that the state did not offer him a deal in exchange for his testimony.

Sergeant Thomas Ehret, of the Columbia Police Department, testified that he was working as supervisor of the crime suppression unit on July 9, 2002, and that they were experiencing heavy drug traffic on the east and west sides of Columbia at that time. He said that he was driving an unmarked police car and that unmarked cars only look for violations of the law and do not stop vehicles unless an emergency arises. Departmental policy requires the officer in an unmarked car to call for a marked police car if the officer observes a violation of the law and, until the marked unit arrives to make the stop, the officer in the unmarked car only continues to observe the suspect(s).

Officer Ehret testified that the incident involving the defendant began when he observed a grey vehicle stopped on West 9th Street in front of the house where a man known as "Nay-Nay" lived. He said "Nay-Nay" was a drug dealer, and the police had made narcotics raids of the house on several occasions. He said the defendant emerged from "Nay-Nay's" house and entered the grey vehicle which drove away, and Officer Ehret followed it. He said the vehicle proceeded to roll through a stop sign, at which point he called for a marked police car to stop the vehicle for the traffic violation. He testified that the officers driving marked cars were busy so he continued following the grey vehicle, which dropped the defendant off at a different house and then stopped at Fairview Park. He said the vehicle sat for approximately ten minutes before the occupants drove back to the place they left the defendant, picked him up, and drove away. He said no one exited or entered the car while it was stopped. He said approximately ten or fifteen minutes later, Officer Morgan arrived in a marked police car and stopped the grey vehicle. Officer Ehret remained in his car and observed the arrest. On cross-examination, he testified that he did not see the defendant with cocaine or carrying anything that appeared to be cocaine.

-3-

Officer Vince Morgan testified that on July 9, 2002, Officer Ehret observed a grey vehicle committing several traffic violations and called for a marked police car to stop the vehicle. Officer Morgan said he located the vehicle and stopped it. The defendant was sitting on the front passenger seat. He said that as he approached the car he observed the defendant "go under a seat and come back up." Officer Morgan said he unsnapped the retention device on his weapon and as he drew nearer the car, he observed the defendant reach inside of his pants. He said he told his partner, Officer Martin, what he had observed and instructed him to remove the defendant from the vehicle. He testified that the defendant said, "There's an ounce of dope in the backseat; it ain't mine" when he exited the car. Officer Morgan said he handcuffed the defendant, searched him for weapons, and placed him in the back of the police car. He said he discovered one hundred dollars in cash on the defendant's person which the defendant claimed was for shopping. He said that he advised the defendant of his Miranda rights and that the defendant told him again, "There's an ounce of dope in the backseat; it's the skinny white dude."

Officer Morgan testified that the three men were separated when they arrived at the police station and that he and another officer conducted a strip search of the defendant. He said during the search a plastic bag containing white powder fell from behind the defendant's scrotum, and the officers found $337.00 hidden in his shoes. Officer Morgan said that Mr. Alexander's testimony in court was consistent with the verbal and written statements he gave the police. On cross-examination, Officer Morgan said the police did not find the $1000.00 that Mr. Alexander allegedly gave the defendant. He also testified that the defendant gave him four different stories concerning the incident: (1) He did not know that cocaine was in the car, (2) he knew about the cocaine only because he overheard the two men talking about it, (3) he heard the man in the back say he had "an ounce of dope" when the police light went on, and (4) the two men were merely giving him a ride to pick up his cellular telephone.

Kathy Carman, a chemist working for the Tennessee Bureau of Investigation, testified that she tested the 3.8 grams of white powder discovered under the defendant's scrotum and the 24.3 grams found in the teddy bear, and she identified the substance as cocaine.

The defendant testified that on July 9, 2002, he called Mr. Ingold because he needed a ride to pick up the telephone he had left at his cousin "Moot's" house

-4-

the previous night. He said that Mr. Ingold arrived with a "white dude" he did not know sitting on the back seat of his car. He said he asked the two men to "make a block" when they arrived at Moot's house because the neighborhood was dangerous for white people. He said that because his cousin was not at home, he called Ingold to pick him up, which he did. He said they were subsequently pulled over by the police, at which point the white man in the back told them he had an ounce of cocaine. The defendant said the police approached the car, grabbed him and accused him of "stuffing something." The defendant said that he told the police that the man in the back had an ounce of cocaine and that he did this because he had nothing to do with the drugs. The defendant claimed that he never saw the $1000.00 in cash, the teddy bear, or any drugs other than the cocaine discovered during the strip search, which he claimed was for personal use. He said he had used cocaine for approximately one and one-half years.

During cross-examination, the defendant said that he no longer used drugs and that he had purchased the drugs found in his pants from a man named "Little Tony." He claimed that he hid the cocaine behind his scrotum before Mr. Ingold picked him up to prevent its discovery. He denied having his hands in his pants when the police officers approached the car and admitted that his cousin Moot is a convicted drug dealer.

*State v. Terrance Cecil*, No. M2004-00161-CCA-R3-CD, 2004 WL 3044896, at *1-3 (Tenn. Crim. App. at Nashville, filed Dec. 30, 2004), *app. denied* (Tenn. May 23, 2005).

Court hearings on the petition for post-conviction relief were held over four days during a period of ten months. Petitioner was represented by an Assistant District Public Defender during the trial, and a family member hired private counsel to represent Petitioner at the sentencing hearing and on appeal. The first day of the hearings dealt exclusively with post-conviction issues regarding the sentencing hearing, and the testimony and other proof at that hearing has no relevance to the issues in this appeal.

Only two witnesses were called to testify by Petitioner at the remaining hearings on the post-conviction petition: Petitioner and the Assistant District Public Defender (hereinafter "trial counsel") who represented him in circuit court through the jury's verdict.

Petitioner has been represented by appointed counsel throughout the post-conviction proceedings in the trial court and in this appeal. However, procedural proceedings in the post-conviction court were unusual by the fact that Petitioner himself performed some of the direct examination of trial counsel, and some of the legal arguments to the post-conviction

court. His post-conviction counsel also participated in some of the direct examination and arguments to the court. Addressed in more detail below, but worthy of note here, Petitioner did not proffer the testimony of any of the police officers mentioned in the summary of facts found in this Court's opinion in Petitioner's direct appeal: Officers Ehret, Morgan, and Martin.

We will review testimony relevant to the two grounds of ineffective assistance of counsel asserted by Petitioner on appeal. Trial counsel testified that he did not recall a video of the vehicle stop by the police being in existence prior to trial. He could not recall exactly which police officers he possibly talked to prior to the trial in 2003, but he had the police reports which summarized what the officers' testimonies would be. Another Assistant District Public Defender in trial counsel's office represented Petitioner at the preliminary hearing in General Sessions Court, and trial counsel had her notes from the hearing to prepare for trial. Trial counsel did not obtain a transcript from the tape recording of the preliminary hearing, or listen to the tape itself.

Trial counsel testified that he investigated the circumstances surrounding the police stopping the vehicle in which Petitioner was a passenger. Trial counsel determined that the facts reflected that the vehicle was stopped because of traffic violations. Trial counsel testified that he came to the conclusion prior to the trial that a motion to suppress any evidence or statements by Petitioner would not have been successful. In fact, trial counsel testified that regarding a motion to suppress that "[i]t would have been frivolous." Trial counsel stated that at the time of the pre-trial proceedings in Petitioner's case in 2003, Petitioner, as a non-owner passenger in the vehicle, did not have standing to challenge a search of the vehicle or its contents, where approximately 24 grams of cocaine was found. As to the search of Defendant's person at the police station, when the bag containing 3.8 grams of cocaine fell from behind his scrotum, trial counsel stated that Defendant was under arrest at the time and the search was incident to the arrest, and as such the search did not violate Petitioner's constitutional rights. Furthermore, trial counsel testified that no physical evidence was seized from Petitioner at the scene where the vehicle was stopped, and therefore, there was no need to move to suppress evidence that was not seized. As to the seizure of the person of Petitioner, trial counsel determined that when Petitioner told the police immediately upon exiting the vehicle that there was an "ounce of dope" in the vehicle, there were reasonable grounds to detain Petitioner. Trial counsel was aware prior to trial that the twenty-four grams of cocaine was found inside a stuffed teddy bear that was in the vehicle, and that an argument "could be made" that the teddy bear was a "closed container" which had been opened and searched without a search warrant. However, trial counsel noted in his testimony that Petitioner was not claiming possession or ownership of the "container," i.e. the teddy bear.

Trial counsel reiterated, after Petitioner's post-conviction counsel began his portion of the direct examination, that he could not conclude that anything was seized from Petitioner at the scene *prior* to Petitioner's detention/arrest - being placed in handcuffs and put into the back of a police car - after twenty-four grams of cocaine were found in the vehicle.

Trial counsel testified that he was aware that Petitioner was subjected to a "*Terry*" search, *see Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), at the scene and was searched again when he was processed after his arrest. Trial counsel also recalled the testimony at trial by a police officer that there was concern that Petitioner was reaching for a weapon when he was observed reaching under the seat in the vehicle.

During cross-examination, trial counsel testified that as of the time of trial in Petitioner's case, he had twenty-seven years experience defending clients in criminal cases. While he only met with Petitioner (who was on bond pre-trial) one time before trial, much of the preparation could be done without Petitioner being present. Trial counsel testified on direct examination that Petitioner failed to attend previously scheduled meetings with trial counsel.

Regarding incriminating statements made by Petitioner, trial counsel agreed that a statement made by Petitioner *not* in response to interrogation would not be a violation of *Miranda* rights. Also, Petitioner's statement that the drugs belonged to someone else in the car fit into Petitioner's defense.

Petitioner testified concerning discrepancies in police officers' testimony as to the location of the vehicle containing Petitioner when the vehicle ran through stop signs. Petitioner complained extensively in his testimony about trial counsel's failure to obtain a typed transcript of the preliminary hearing, rather than just relying on the notes taken from that hearing by another Assistant District Public Defender. Petitioner also spent a considerable portion of his testimony at the post-conviction hearing going over what he deemed to be specific inconsistencies in the testimony and reports of the State's witnesses.

Petitioner denied that he did any "reaching" when the officers first walked up to the vehicle after the stop. His analysis of the fact was expressed as follows: ". . . if I reached or put them in fear of their life, as they claimed, then how come no weapons was drawn? How come he's [Officer Morgan] got to the tell the officer, already on the passenger side, to get me out?"

Petitioner testified that since he had already been searched at the scene for a weapon, and no weapon was found, the police had no right to strip search him at the police vice-station. Petitioner testified that his "problem" with the stop of the vehicle by the police was

that "[t]here was never no *Miranda* rights read." Petitioner specified one example of why trial counsel's failure to review a transcript of the General Sessions Court preliminary hearing resulted in Petitioner receiving ineffective assistance of counsel: his trial counsel failed to file motions to suppress evidence. Referring to the trial transcript testimony of Officer Morgan that Petitioner stated "there's an ounce of dope in the backseat, it ain't mine" and Petitioner's subsequent statement to Officer Morgan reiterating that the ounce of dope in the backseat belonged to the "white dude" in the backseat, Petitioner testified at the post-conviction hearing,

> My thing about [trial counsel], was, if he got the transcript transcribed from my preliminary hearing, he would have knew [sic] that I didn't say none of this stuff. It was my charge partner [co-defendant Cameron Alexander], the one who testified against me, that made those incriminating statements. But since they said that I did say it, they was [sic] in violation of *Miranda*, which means that all those statements that they said I made, that they told to the jury, wasn't [sic] admissible no way. It's due to deficient warrant [sic].

Petitioner submitted a transcript of the preliminary hearing and the post-conviction court admitted it as an exhibit. We have reviewed this transcript, and in it we have found that Officer Morgan testified as follows at the preliminary hearing:

| | |
|---|---|
| **[Prosecutor]:** | You say it [Petitioner's motion in the front seat as officers approached] wasn't something to play around with; in your mind what was your reason to pat down Mr. Cecil [Petitioner][?] |
| **Officer Morgan:** | In case he was putting a weapon down the front of his pants[.] |
| **[Prosecutor]:** | Did Mr. Cecil [Petitioner]; [sic] during that pat down or at anytime after he got out of the car did he make any statements[?] |
| **Officer Morgan:** | As soon as we got him out of the vehicle; he was very nervous and jittery. He stated that there was an ounce of dope in the backseat ["]it ain't mine[."] |
| **[Prosecutor]:** | What did you do once he [Petitioner] made that statement[?] |

-8-

**Officer Morgan:**     I finished patting Mr. Cecil [Petitioner] down, placed handcuffs on him and took him back to my vehicle[.]

**[Prosecutor]:**     And then what happened[?]

**Officer Morgan:**     I advised Mr. Cecil [Petitioner] of him [sic] *Miranda* rights and then he stated once again that uh [sic] he knows there's an ounce of dope in the backseat and it ain't [sic] his it's the other guy's, the skinny white dude[.]

At the post-conviction hearing Petitioner further testified, regarding his allegations that trial counsel rendered ineffective assistance of counsel:

**[Petitioner]:**     And uh, had he went and did some investigation of the background like he was supposed to, he would have knew the police report that he had, that I had advised that I had wanted a lawyer. Now, had he would have advised that I wanted a lawyer, and I was still questioned without being allowed to call a lawyer. And, uh, from my preliminary hearing transcript – because I made a record of, back in, uh, July the 31st – at the scene, I had told them I had wanted a lawyer. They still questioned me. And then, at the scene – I mean, like at the office – you know what I'm saying? – they were still questioning me. But all the statements that they alleged I made, I never made none of them. But like I testified earlier ago, if I had made it, by them just giving me, uh, deficient *Miranda* warnings, you know what I'm saying? Like, uh, none of them statements should have been admissible in court. And I can go through tons of statements that they said I allegedly made.

Petitioner concluded his testimony concerning why he was entitled to have the evidence suppressed by alluding to the fact that since no citation was issued for any alleged traffic violation, "[t]hey didn't have no probable cause verification to pull us over, because there was never one issued."

We have reviewed the exhibits admitted at the post-conviction hearing. The preliminary hearing transcript reflects that Officer Chaffin and Officer Dooley found the

-9-

twenty-four-ounce bag of cocaine stuffed into the teddy bear that was lying in the backseat of the vehicle in which Petitioner was a passenger. A copy of the trial transcript was also made an exhibit at the post-conviction hearing. Officers Chaffin and Dooley did not testify at the preliminary hearing, or at the trial, or at the post-conviction hearing. Thus critical evidence of the details of the aspects of the seizure of the cocaine found in the teddy bear is not in the record.

**Analysis**

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Burns*, 6 S.W.3d at 461; *Baxter*, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. *Id*. at 687; *Burns*, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Burns*, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. *Burns*, 6 S.W.3d at 461; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." *Strickland*, 466 U.S. at 688; *Burns*, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462; *see also Strickland*, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics*, see Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, *see Strickland*, 466 U.S. at 690; *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *Id*. "However, a trial court's *conclusions of law*—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions." *Id*. (emphasis in original).

Even though we could easily conclude that there is nothing in the record to show that trial counsel rendered deficient performance, we conclude that Petitioner failed to put on any proof of *Strickland* prejudice even assuming, *arguendo*, that trial counsel had been deficient by not filing any motion to suppress evidence. It is well settled that when a Petitioner in post-conviction proceedings asserts that counsel rendered ineffective assistance of counsel by failing to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the post-conviction hearing; otherwise, Petitioner asks the Court to grant relief based upon mere speculation. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. 1990). The same standard applies when a Petitioner argues that trial counsel was constitutionally ineffective by failing to file pre-trial motions to suppress evidence. In order to show prejudice, Petitioner must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064-65). In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing. On issues such as the ones in the case *sub judice*, it is likely a rare occasion indeed when the testimony of only the Petitioner and the trial counsel could provide proof of the merit of a suppression motion based upon a warrantless search. If trial counsel had filed the motions to suppress evidence that Petitioner claims should have been filed, there is no evidence in the record to justify granting the motions.

Thus, based upon the entire record before this Court, it would require pure speculation to conclude that any motion to suppress evidence in Petitioner's case would have resulted in the suppression of the cocaine found in the teddy bear. As to the Petitioner's statements to police and the cocaine found on his person following the strip search, there is also nothing in the record to show trial counsel rendered deficient performance. The preliminary hearing transcript, submitted by Petitioner as evidence, shows that the stop of the vehicle was not invalid, because traffic violations had occurred. Removal of Petitioner from the car and the *Terry* pat down search did not result in the seizure of physical evidence. Petitioner made incriminating statements which were not the result of interrogation, so *Miranda's* dictates

were not violated. *See State v. Northern*, 262 S.W.3d 741, 751 (Tenn. 2008) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S. Ct. 1682, (1980) ("Interrogation" for purposes of Miranda means express questioning by police or words or actions designed to elicit an incriminating response). The search at the vice station after he was taken into custody was not in violation of any constitutional prohibition. See *State v. Crutcher*, 989 S.W.2d 295, 301 (Tenn. 1999) (noting that law enforcement authority in cases of incarceration "extends to performing a detailed 'inventory search' of all personal effects in the arrestee's possession") (citing *Illinois v. Lafayette*, 462 U.S. 640, 648, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983)).

Petitioner is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE